**JOSEPH A. FORTUNATO LAW OFFICE**
38 Windsor Place
Upper Montclair, New Jersey 07043
(973) 558-0514
josephfortunato@verizon.net
New Jersey Attorney ID No. 027201981
Attorney for Plaintiff Lana Leguia

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
FILED

2026 AUG 13  A 1:56

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LANA LEGUIA,** | Civil Action No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| **DR. DALE G. CALDWELL, in his official capacity as Secretary of State of New Jersey,** | |
| Defendant. | |

Plaintiff Lana Leguia ("Plaintiff"), by her undersigned counsel, brings this action for prospective declaratory and injunctive relief against Defendant Dr. Dale G. Caldwell, in his official capacity as Secretary of State of New Jersey, and alleges as follows:

### PARTIES AND ADDRESSES

1. Plaintiff Lana Leguia is a resident of Stanhope, New Jersey and is the Libertarian/independent candidate who timely sought placement on the November 3, 2026 General Election ballot for the United States House of Representatives, New Jersey Seventh Congressional District. Pursuant to *Local Civil Rule 10.1(a)*, Plaintiff's street and post-office address is: 249 US 206 North, Stanhope, New Jersey 07874.

2. Defendant Dr. Dale G. Caldwell is the Secretary of State of New Jersey and New Jersey's chief election officer. He is sued only in his official capacity for prospective declaratory and injunctive relief. His office is located at 225 West State Street, 5th Floor, Trenton, New Jersey 08608, with mailing address P.O. Box 300, Trenton, New Jersey 08625.

### JURISDICTION AND VENUE

3. This action arises under the First and Fourteenth Amendments to the United States Constitution and *42 U.S.C. § 1983*. This Court has original federal-question jurisdiction under *28 U.S.C. §§ 1331 and 1343(a)(3)*.

4. This Court has authority to grant declaratory relief under *28 U.S.C. §§ 2201 and 2202* and preliminary and permanent injunctive relief under *Federal Rule of Civil Procedure 65*.

5. Plaintiff seeks prospective relief against a state officer responsible for enforcing New Jersey's election laws. The action is therefore within the *Ex parte Young* exception to state sovereign immunity.

6. Venue is proper in this District under *28 U.S.C. § 1391(b)* because Defendant resides in this District and the events, acts, and threatened enforcement challenged in this Complaint occurred or will occur in New Jersey.

7. This is an original federal constitutional challenge to the prospective enforcement of the circulator-residency requirement in *N.J.S.A. 19:13-7*. Plaintiff does not seek damages from Defendant and does not seek a declaration that any New Jersey court acted unlawfully. Plaintiff seeks adjudication of whether the statute itself may constitutionally be enforced against her and prospective relief against its enforcement.

## FACTUAL ALLEGATIONS

8. New Jersey law requires an independent candidate for the United States House of Representatives to submit a direct-nomination petition containing at least 250 valid signatures. *N.J.S.A. 19:13-5*.

9. On or before June 2, 2026, Plaintiff timely filed a nominating petition containing 759 signatures. The Division of Elections accepted 755 signatures before the residency challenge at issue here.

10. Book One contained 85 signatures and was circulated by Plaintiff, a New Jersey resident. Books Two through Nine contained 670 signatures circulated by Amanda P. Rusha, Tracie A. Middleton, and Elijah T. Mohammed, residents of New York.

11. The New Jersey Republican State Committee challenged the 670 signatures solely because the circulators were not New Jersey residents, relying on *N.J.S.A. 19:13-7*. It did not establish that those signatures were forged, fraudulent, or obtained in bad faith.

12. *N.J.S.A. 19:13-7* requires, among other things, that a person who circulates a direct-nomination petition be "voter eligible," including residency in New Jersey.

13. At the June 9, 2026 Office of Administrative Law hearing, both sides requested an opportunity to brief the constitutionality of the residency restriction. Plaintiff argued that the restriction could not constitutionally be applied in light of *Meyer v. Grant*, 486 U.S. 414 (1988), *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999), and *Arsenault v. Way*, 539 F. Supp. 3d 335 (D.N.J. 2021).

14. The Administrative Law Judge recognized that petition circulation is core political speech and that Plaintiff raised significant constitutional arguments, but concluded that the OAL lacked jurisdiction to declare a statute unconstitutional. The ALJ therefore applied *N.J.S.A. 19:13-7* and recommended that the 670 signatures be excluded.

15. On June 11, 2026, Secretary Caldwell modified the Initial Decision, rejected the residency objection, and accepted Plaintiff's nomination petition. The Secretary concluded that the rationale of *Arsenault* applies with equal, if not greater, force to general-election circulators because there is no practical distinction between circulating a primary-election petition and circulating a general-election petition.

16. The Secretary further concluded that the primary-election residency restriction considered in Arsenault and the general-election residency restriction in *N.J.S.A. 19:13-7* are materially the same.

17. The Department of State has represented that, after Arsenault, it acted in consultation with the Office of the Attorney General and discontinued the residency requirement for all nomination petitions, including petitions under *N.J.S.A. 19:13-7*, and maintained that practice for approximately five years.

18. During that five-year period, the State consistently advised independent candidates that they could use out-of-state circulators and accepted otherwise valid nomination petitions circulated by nonresidents.

19. Plaintiff organized her 2026 petition drive in light of that settled State practice. Had the State announced before the filing deadline that it would reimpose the residency requirement in *N.J.S.A. 19:13-7*, Plaintiff could have retained New Jersey resident circulators or gathered substitute signatures.

20. The Secretary is presently treating the 670 signatures as invalid under *N.J.S.A. 19:13-7* and, as a result, is refusing to place Plaintiff on the November 3, 2026 general-election ballot. The petition-filing deadline has passed, so Plaintiff can no longer cure the exclusion by restructuring her petition drive or gathering substitute signatures.

21. Plaintiff therefore brings this original federal civil-rights action under *42 U.S.C. § 1983* against the Secretary in his official capacity, challenging the present and prospective enforcement of *N.J.S.A. 19:13-7* against her nomination petition.

22. Plaintiff seeks an adjudication of her First and Fourteenth Amendment rights and prospective relief directing the Secretary not to enforce the unconstitutional circulator-residency requirement against her nomination petition.

## THE CONSTITUTIONAL BURDEN

23. Plaintiff's exclusion from the ballot burdens her own rights of political speech, association, and ballot access under the First and Fourteenth Amendments. It also burdens the rights of New Jersey voters to meaningful electoral choice. *New Jersey Democratic Party, Inc. v. Samson*, 175 N.J. 178, 190 (2002). Petition circulation is core political speech. *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186-87 (1999).

24. A residency rule that categorically excludes all non-New-Jersey residents from serving as circulators reduces the number of available speakers and restricts Plaintiff's ability to associate with persons willing to carry her political message and secure ballot access.

25. In Arsenault, this Court held New Jersey's materially similar primary-election circulator-residency restriction unconstitutional as applied after concluding that the restriction did not survive strict scrutiny and that the State had not shown less restrictive alternatives inadequate. 539 F. Supp. 3d at 347-49.

26. The State's interests in preventing fraud, ensuring circulator accountability, and securing access to witnesses can be served through materially less restrictive means, including sworn circulator affidavits, consent to New Jersey jurisdiction, subpoenas, disclosure requirements, and other enforcement mechanisms that do not categorically exclude nonresident speakers.

27. The out-of-state circulators at issue executed circulator affidavits attesting that they personally circulated the petitions, witnessed the signatures, and believed the signers to be qualified voters.

## UNEQUAL TREATMENT OF INDEPENDENT AND ALTERNATIVE-PARTY CANDIDATES

28. Following Arsenault, New Jersey did not enforce the materially similar residency requirement against circulators of primary-election nomination petitions. Enforcing *N.J.S.A. 19:13-7* now against independent and alternative-party candidates therefore imposes a materially heavier burden on their route to the same general-election ballot.

29. A burden that falls unequally on new or small political parties or independent candidates impinges on associational choices protected by the First Amendment. *Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983).

30. New Jersey law likewise reflects a long movement toward equal treatment of alternative political parties. See *Council of Alternative Political Parties v. State, Division of Elections*, 344 N.J. Super. 225 (App. Div. 2001).

## IRREPARABLE INJURY AND NEED FOR IMMEDIATE RELIEF

31. Absent immediate relief, Plaintiff will be excluded from the November 3, 2026 general-election ballot because of the residency of her petition circulators.

32. The loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Kim v. Hanlon*, 99 F.4th 140, 159 (3d Cir. 2024).

33. Exclusion from the ballot cannot be adequately remedied with money damages after ballots are finalized or after the election occurs. Plaintiff would lose the opportunity to compete; her supporters would lose the opportunity to vote for her; and an alternative political party would lose access to the electoral process.

34. The election calendar is moving rapidly. Delay risks making any later judicial ruling practically ineffective.

35. Plaintiff seeks immediate relief because the Secretary's present refusal to place her on the ballot is causing ongoing constitutional injury that cannot be remedied after ballots are finalized or the election occurs.

## COUNT I

### *42 U.S.C. § 1983* - FIRST AMENDMENT: FREEDOM OF SPEECH AND ASSOCIATION

36. Plaintiff repeats and realleges paragraphs 1 through 35.

37. Petition circulation constitutes core political speech and association protected by the First and Fourteenth Amendments.

38. *N.J.S.A. 19:13-7*, on its face invalidates otherwise valid signatures solely because the circulators reside outside New Jersey, and thus substantially burdens Plaintiff's speech, association, ballot-access efforts, and the speech and association of her circulators and supporters.

39. The categorical residency restriction is not narrowly tailored to a constitutionally sufficient State interest and less restrictive alternatives are available.

40. Enforcement of the residency restriction against Plaintiff therefore violates the First and Fourteenth Amendments, actionable under *42 U.S.C. § 1983.*

## COUNT II

### *42 U.S.C. § 1983* - FOURTEENTH AMENDMENT EQUAL PROTECTION

41. Plaintiff repeats and realleges paragraphs 1 through 40.

42. New Jersey permits primary-election candidates to proceed without the materially similar circulator-residency restriction invalidated as applied in Arsenault, while enforcement of *N.J.S.A. 19:13-7* imposes that restriction upon Plaintiff as an independent/alternative-party candidate seeking access to the general-election ballot.

43. That unequal ballot-access burden implicates fundamental political speech and association and is not justified by a constitutionally sufficient governmental interest tailored to the disparate treatment.

44. Enforcement of the residency requirement against Plaintiff therefore violates the Equal Protection Clause of the Fourteenth Amendment, actionable under *42 U.S.C. § 1983.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that the New Jersey-residency requirement for circulators contained in *N.J.S.A. 19:13-7* is unconstitutional on its face and as applied to Plaintiff's 2026 direct-nomination petition;

B. Temporarily, preliminarily, and permanently enjoin Defendant, his officers, agents, employees, and persons acting in concert with him from rejecting or treating as invalid Plaintiff's 670 otherwise valid petition signatures solely because the circulators were not New Jersey residents;

C. Direct Defendant to treat Plaintiff's nomination petition as legally sufficient without regard to the circulators' nonresidency and to take the steps within his authority necessary to place and maintain Plaintiff's name on the November 3, 2026 general-election ballot, subject to any independent signature objections not resolved in Plaintiff's favor;

D. Award Plaintiff reasonable attorneys' fees and costs under *42 U.S.C. § 1988*, to the extent recoverable; and

E. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**JOSEPH A. FORTUNATO LAW OFFICE**

By: /s/ Joseph A. Fortunato

Joseph A. Fortunato, Esq.

38 Windsor Place

Upper Montclair, NJ 07043

(973) 558-0514

josephfortunato@verizon.net

Attorney for Plaintiff Lana Leguia

### CERTIFICATION PURSUANT TO L.CIV.R. 11.2

I, Joseph A. Fortunato, Esq., certify pursuant to *Local Civil Rule 11.2* that the matter in controversy has been the subject of related proceedings including New Jersey Republican State Committee, Inc. v. Lana Leguia, OAL Docket No. STE 09209-26; New Jersey Superior Court, Appellate Division Docket No. A-003541-25T1; and New Jersey Supreme Court Docket No. 092394 (S-208-25). Those proceedings are disclosed solely pursuant to *Local Civil Rule 11.2*. This Complaint asserts Plaintiff's affirmative federal claims under *42 U.S.C. § 1983* for prospective declaratory and injunctive relief against the Secretary of State.

I certify that the foregoing statements are true. I am aware that if any statement is willfully false, I am subject to punishment.

Dated: August 13, 2026

/s/ Joseph A. Fortunato

Joseph A. Fortunato, Esq.