**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LANA LEGUIA,<br><br>Plaintiff,<br><br>v.<br><br>DR. DALE G. CALDWELL, in his official capacity as Secretary of State of New Jersey,<br><br>Defendant. | Hon. Zahid N. Quraishi, U.S.D.J.<br><br>Civil Action No.: 26-10263 |

# RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

Attorney for Defendants
R.J. Hughes Justice Complex,
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
(609) 789-2889

Stephen Ehrlich
*Deputy Solicitor General*

Liza B. Fleming
Nathaniel F. Rubin
*Deputy Attorneys General*
On the Brief

# TABLE OF CONTENTS

PAGE


INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARDS ..... 4

ARGUMENT ..... 5

I. Leguia Will Suffer Irreparable Harm Without Preliminary Relief. ..... 5

II. The Equitable Factors And The Public Interest Favor Leguia. ..... 7

III. The Secretary Included Leguia On The Ballot Because The Residency Requirement For General-Election Circulators Cannot Be Severed From The Residency Requirement For Primary-Election Circulators. ..... 9

IV. Leguia Is Not Likely To Succeed On The Merits of Her Constitutional Claims. ..... 10

A. The Residency Requirement Complies With The First Amendment. ..... 11

B. The Residency Requirement Complies With The Fourteenth Amendment. ..... 14

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Affiliated Distillers Brands Corp. v. Sills*,
289 A.2d 257 (N.J. 1972) .......... 9, 10

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) .......... 10, 11, 15

*Arsenault v. Way*,
539 F. Supp. 3d 335 (D.N.J. 2021) .......... passim

*Buckley v. Am. Constitutional Law Found.*,
525 U.S. 182, 190 (1999) .......... 12, 13

*Burdick v. Takushi*,
504 U.S. 428 (1992) .......... 10, 11, 15

*Coffelt v. Fawkes*,
765 F.3d 197 (3d Cir. 2014) .......... 6

*Consumer Data Indus. Ass'n v. Platkin*,
No. 19-cv-19054, 2024 WL 1299256 (D.N.J. Mar. 27, 2024) .......... 9

*Council of Alternative Political Parties v. Hooks*,
121 F.3d 876 (3d Cir. 1997) .......... 6, 8

*Eakin v. Adams Cnty. Bd. of Elections*,
149 F.4th 291, 304 (3d Cir. 2025) .......... 12

*Erie Indem. Co. v. Stephenson*,
157 F.4th 265 (3d Cir. 2025) .......... 5

*Initiative & Referendum Inst. v. Jaeger*,
241 F.3d 614, 617 (8th Cir. 2001) .......... 12, 14

*Jenness v. Fortson*,
403 U.S. 431, 442 (1971) .......... 15

*Johnson & Johnson v. Samsung Bioepis Co.*,
173 F.4th 454 (3d Cir. 2020) ........................................................................ 6

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2024) .......................................................................... 8

*Lerman v. Bd. of Elections in the City of New York*,
232 F.3d 135, 147 (2d Cir. 2000) .................................................................. 12

*Libertarian Party of Va. v. Judd*,
718 F.3d 308, 316 (4th Cir. 2013) ................................................................. 13

*Mazo v. N.J. Sec'y of State*,
54 F.4th 124 (3d Cir. 2022) .....................................................................passim

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) ..................................................................................7, 8

*Nader v. Brewer*,
531 F.3d 1028, 1036 (9th Cir. 2008) ............................................................. 13

*N.J. Republican State Committee, Inc. v. Leguia*,
No. C-662, 2026 WL 2323300 (N.J. Aug. 7, 2026) ........................................... 4

*N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*,
669 F.3d 374 (3d Cir. 2012) ........................................................................... 9

*N.J. Staffing All. v. Fais*,
749 F. Supp. 3d 511 (D.N.J. 2023) .................................................................. 4

*Payne v. Fawkes*,
No. 14-cv-53, 2014 WL 4499559 (D.V.I. Sept. 12, 2014) .................................... 6

*Queens Cnty. Republican Comm'n v. N.Y. State Bd. of Elections*,
222 F. Supp. 2d 341 (E.D.N.Y. 2002) ............................................................... 6

*SEC v. Chappell*,
107 F.4th 114 (3d Cir. 2024) .......................................................................... 7

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997) ...............................................................................10, 11

*Valenti v. Mitchell*,
962 F.2d 288 (3d Cir. 1992) .......... 6

*Wilmoth v. Sec'y of State of N.J.*,
731 F. App'x 97 (3d Cir. 2018) .......... 12

*Yes On Term Limits, Inc. v. Savage*,
550 F.3d 1023 (10th Cir. 2008) .......... 13

**Statutes & Legislation**

N.J. Stat. Ann. § 19:13-5 .......... 2

N.J. Stat. Ann. § 19:13-7 .......... passim

N.J. Stat. Ann. § 19:13-9 .......... 8, 15

N.J. Stat. Ann. § 19:14-1 .......... 6

N.J. Stat. Ann. § 19:23-11 .......... passim

N.J. Stat. Ann. § 19:23-14 .......... 15

N.J. Stat. Ann. § 19:23-20 .......... 15

N.J. Stat. Ann. § 19:32-6 .......... 13

N.J. Stat. Ann. § 19:63-9 .......... 6

2014 N.J. Laws ch. 83 .......... 10

## INTRODUCTION

New Jersey election law requires all candidates for office to submit nominating petitions with a certain number of signatures. And it provides two paths to the same general election: major-party candidates must submit signed nominating petitions to appear in a primary election leading to a general election and third-party candidates must submit signed nominating petitions to appear in the general election itself. At issue in this case is New Jersey's requirement that those petitions must be circulated by New Jersey residents. Half a decade ago, that requirement was held unconstitutional for major-party candidates. So, to put all candidates on equal footing, the New Jersey Secretary of State declined to apply the circulator-residency requirement for third-party candidates too. In reliance on that longstanding practice, Plaintiff Lana Leguia submitted a nominating petition that included the requisite number of signatures, many of which were obtained by out-of-state circulators. The Secretary then upheld the validity of her petition. But when the New Jersey Republican State Committee challenged that decision, the state court ordered the Secretary to strike Leguia from the ballot. Plaintiff then filed this case and an emergency motion seeking to be restored on the ballot.

Defendant Secretary of State Dr. Dale G. Caldwell takes no position on Plaintiff's motion. The Secretary agrees that Leguia should appear on the ballot this November as a matter of state severability law: continuing to apply a residency requirement for third-party circulators but not major-party circulators would contravene the Legislature's intent to treat them equally.[1] But while the equities and public interest weigh

[1] Because the Secretary understands that the Committee intends to intervene in this matter to argue for Leguia's exclusion, the Secretary does not oppose that intervention.

heavily in favor of Leguia, she cannot succeed on the merits of the particular claims she pled here because no binding precedent supports that the circulator-residency requirement violates the First or Fourteenth Amendments. The Secretary offers these views to aid the Court in assessing Plaintiff's motion.

## BACKGROUND

To be on New Jersey's general election ballot, a candidate can either win nomination in a party primary or be directly nominated to the general election ballot through a nominating petition with at least 250 signatures from qualified voters within the candidate's district. *See* N.J. Stat. Ann. § 19:13-5. Under N.J. Stat. Ann. § 19:13-7, circulators of such a nominating petition must be New Jersey residents. *Id.* (requiring that "person who circulates the petition" be "a resident of this State"). This requirement is substantively identical to N.J. Stat. Ann. § 19:23-11, which likewise required that circulators of petitions for candidates to appear on major-party primary ballots be New Jersey residents. But § 19:23-11's residency requirement was held unconstitutional in *Arsenault v. Way*, 539 F. Supp. 3d 335 (D.N.J. 2021). And because the Legislature did not intend different circulator-residency requirements for major-party candidates seeking to appear in the general election through a primary and third-party candidates seeking to appear directly in the general election, the New Jersey Division of Elections has, since *Arsenault*, declined to enforce section 19:13-7's residency requirement. So it has told all candidates for five years that petition circulators need not be New Jersey residents. *See* Ex. 3 to the Declaration of Nathaniel F. Rubin Ex. 3 ("Ex. 3") at 3.[2]

[2] For reference, where not otherwise noted, all citations to "Ex." where not otherwise noted are to exhibits to the Rubin Declaration.

Here, Lana Leguia timely filed a direct-nomination petition to appear on the general election ballot in the upcoming contest for New Jersey's Seventh Congressional District in the U.S. House of Representatives. The petition contained a total of 755 signatures that were accepted by the Division of Elections. But the New Jersey Republican State Committee objected to Leguia's petition, challenging 670 signatures because they were collected by nonresident circulators. After the Division transmitted the matter to New Jersey's Office of Administrative Law, the Administrative Law Judge determined that Leguia was "essentially asking" to declare section 19:13-7 unconstitutional. But because that question was beyond the ALJ's jurisdiction, the ALJ declined to consider it, ruled that section 19:13-7 should be enforced, and held that Leguia should not appear on the ballot. Ex. 1 at 6-7.

The Secretary then disagreed and rendered a final agency decision. While declining to address the constitutionality of section 19:13-7, he observed "there is no practical distinction between circulators collecting petition signatures for a Primary Election petition and a General Election petition." Ex. 2. at 5. And because "candidates seeking petition signatures to appear on the General Election ballot should not be burdened with greater restrictions than Primary Election candidates," the Secretary dismissed the Committee's challenge and accepted Leguia's petition to appear on the general election ballot. Ex. 2 at 5-6. When the Committee applied for a stay, the Secretary reaffirmed his decision, explaining that the residency requirement in N.J. Stat. Ann. § 19:23-11—struck down in *Arsenault*—is "materially indistinguishable from [N.J. Stat. Ann. § 19:13-7]," and "nothing in the text, structure or context of" New Jersey's election statutes

indicated that the Legislature intended a "lopsided scheme" burdening "third-party general-election candidates while imposing a less stringent requirement on candidates seeking to secure their candidacy through a primary election." Ex. 3 at 3.

The Committee then appealed to New Jersey's Appellate Division. Despite evidence in the record that the Secretary had consulted with the Attorney General on his decision, the Appellate Division nonetheless reasoned that if the Secretary "refuse[s] to enforce a legislative act," he could do so only if he "based his determination on the advice of the [Attorney General]." Ex 4 at 4. So it vacated the Secretary's final decision and remanded to the Secretary to remove Leguia from the ballot. Ex 4 at 4.

Leguia petitioned for certification from the New Jersey Supreme Court, which denied her petition on yet another ground. The court explained that Leguia "could have, but did not raise a constitutional challenge before the Superior Court" and that Leguia's challenge "has shifted from a facial-challenge to an as-applied challenge." *N.J. Republican State Committee v. Leguia*, No. C-662, 2026 WL 2323300, at *1 (N.J. Aug. 7, 2026). So it denied Leguia's petition because "no record to assess an as-applied challenge has been created in this matter." *Id.* The court nowhere explained why Leguia would have needed to lodge a constitutional challenge in Superior Court when, due to the Secretary's decision, she was entitled to be on the ballot. The New Jersey Supreme Court's ruling left in place the Appellate Division's order to remove Leguia from the general-election ballot. Leguia's complaint and emergency motion in this Court followed.

## LEGAL STANDARDS

The standards for granting a temporary restraining order and a preliminary injunction are the same. *See N.J. Staffing All. v. Fais*, 749 F. Supp. 3d 511, 519 (D.N.J.

2023). To warrant that relief, a plaintiff must establish "(1) [a] reasonable probability of success on the merits of the claim for which injunctive relief is sought; (2) [a]n irreparable harm in the absence of preliminary injunctive relief; (3) [a] balancing of the equities associated with the possibilities of harms to other interested persons resulting from the grant or denial of injunctive relief; and (4) [a]n assessment of the public interest." *Erie Indem. Co. v. Stephenson*, 157 F.4th 265, 275 (3d Cir. 2025). The first two of those factors are "gateway" considerations which must be satisfied before the others can justify preliminary relief. *Id.*

## ARGUMENT

While the Secretary takes no position on Plaintiff's motion, he writes to aid the Court in its analysis. Here, Leguia is likely to suffer irreparable harm absent preliminary relief because she will be removed from the general-election ballot, which county clerks may begin printing later this month. And the other equities likewise weigh heavily in her favor: Leguia relied on the Secretary's guidance that she could use out-of-state circulators, and without an order from this Court, she cannot appear on the November ballot. But the State believes that Leguia is not likely to succeed on the merits of these particular federal claims. Although the Secretary included her on the ballot because N.J. Stat. Ann. § 19:13-7 (at issue here) is inseverable from N.J. Stat. Ann. § 19:23-11 (which a federal court invalidated five years ago), her constitutional arguments are misplaced—because *Arsenault* is only persuasive authority and not binding on this Court.

### I. Leguia Will Suffer Irreparable Harm Without Preliminary Relief.

Without an order from this Court, Leguia will suffer irreparable harm. Such harm exists when an injury "cannot be adequately be compensated after the fact by monetary

damages." *Johnson & Johnson v. Samsung Bioepis Co.*, 173 F.4th 454, 460 (3d Cir. 2020). That perfectly describes Leguia's exclusion from the ballot: if she is unable to participate in the general election, there is no monetary award that could compensate her for missing the opportunity to be elected by voters of the Seventh Congressional District.

Unsurprisingly, then, courts have consistently held that the inability to appear on a ballot is an irreparable injury. *See, e.g.*, *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997) ("If the plaintiffs lack an adequate opportunity to gain placement on the ballot in this year's election, this infringement on their rights cannot be alleviated after the election."); *Coffelt v. Fawkes*, 765 F.3d 197, 204 (3d Cir. 2014) (appellants would be irreparably harmed unless sought candidacy were allowed to proceed); *Valenti v. Mitchell*, 962 F.2d 288, 299 (3d Cir. 1992) ("Certainly, the injury to a potential candidate resulting from denial of a place on the primary ballot is great."); *Queens Cnty. Republican Comm'n v. N.Y. State Bd. of Elections*, 222 F. Supp. 2d 341, 346 (E.D.N.Y. 2002) ("If [candidate's] name legitimately belongs on the ballot and it does not appear, then no monetary award will redress the injury…"); *Payne v. Fawkes*, No. 14-cv-53, 2014 WL 4499559, at *9 (D.V.I. Sept. 12, 2014) ("[T]here is no adequate remedy at law for a qualified candidate whose name is improperly left off an election ballot.").

That harm would result absent an order from this Court. Election day is only 78 days away. And many election-related deadlines precede that date. Most significantly, each county clerk must finalize the general-election ballot for printing "on or before the 64th day prior to the general election." *See* N.J. Stat. Ann. §19:14-1. That is two weeks away, on August 31, 2026. County clerks must also send mail-in ballots to voters by "the 45th day before" the election, which is September 19, 2026. *See* N.J. Stat. Ann.

§19:63-9. So without a Court order from this Court, Leguia's harm from being left off the ballot will become imminently irreparable.

## II. The Equitable Factors And The Public Interest Favor Leguia.

The balance of equities and public interest also favor Leguia here. As to the balance of equities, the "potential injury to" Leguia without a preliminary injunction far outweighs "the potential injury to the defendant" with such an order in place. *SEC v. Chappell*, 107 F.4th 114, 138 (3d Cir. 2024). Because Leguia is currently excluded from the general election and counties have until August 31 to finalize their ballots, they will likely be unable to accommodate a later order from this Court determining that Leguia should have appeared on the ballot. So the harms to Leguia from delayed relief are great and the harms to the Secretary—as the State's chief election officer—are minimal. That is especially so where an order requiring the Secretary to place Leguia on the ballot is consistent with his own final decision to do so, before litigation ensued.

The equitable factors and the public interest strongly favor Leguia too. The Secretary has told candidates for the past five years that they need not use in-state circulators. Ex. 3 at 3. Candidates have relied on that guidance, and Leguia is no exception. *See* Declaration of Lana Leguia In Support of Emergent Application (ECF No. 2-2) ¶¶ 3-5. Whether or not that guidance would be sufficient to formally estop the Secretary, it evidences a strong equitable interest that Leguia—as well as other candidates and the public—have in reliable, consistent, and predictable rules for elections. After all, it is "a bedrock tenet of election law" that "[w]hen an election is close at hand, the rules of the road must be clear and settled." *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring). And in this case, it is upending the five-year status quo, not an

injunction from this Court, that will "lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Id.*; *see Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024) (explaining that the "focus of the *Purcell* principle" is "on avoiding election issues that could lead to voter confusion shortly before an election" and upholding an election-related injunction because "the District Court's order would reduce, if not eliminate voter confusion"). That is especially true where, as here, the candidate would be unable to cure any deficiencies. The deadline for candidates to submit signed nominating petitions passed on June 2, 2026. *See* N.J. Stat. Ann. § 19:13-9. So Leguia would not have an opportunity to gather new signatures using in-state circulators. For her to be excluded from the ballot after relying on the Secretary's longstanding guidance would be deeply unfair—an outcome the Secretary did not press and is instead the result of proceedings that occurred before the state courts.

And that unfairness directly affects the public. Just as a candidate is irreparably harmed by being excluded from an election, voters are harmed when they are unable to cast ballots for candidates who are improperly excluded. *See Hooks*, 121 F.3d at 883 ("Plaintiffs' voting and associational rights are burdened by their inability to nominate, support, and vote for candidates who represent their beliefs."). Because a timely injunction affecting the content of a ballot "appears to be entirely manageable" here, *Kim*, 99 F.4th at 159-60, the equities and the public interest weigh heavily in favor of Leguia.

## III. The Secretary Included Leguia On The Ballot Because The Residency Requirement For General-Election Circulators Cannot Be Severed From The Residency Requirement For Primary-Election Circulators.

As a matter of state law, section 19:13-7 (at issue here) is not severable from section 19:23-11 (which was struck down in *Arsenault*). That is why the Secretary included her on the ballot. Severability of a state statute is a question of state law. *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 396 (3d Cir. 2012). That inquiry turns on "legislative intent." *Id.* Specifically, severability requires that there be "such a manifest independence of the parts as to clearly indicate a legislative intention that the constitutional insufficiency of the one part would not render the remainder inoperative." *Id.* In other words, "to save a particular enactment, a court must determine whether, considering the particular defect involved, the legislative body in question would prefer to have the enactment survive as corrected or die." *Consumer Data Indus. Ass'n v. Platkin*, No. 19-cv-19054, 2024 WL 1299256, at *28 (D.N.J. Mar. 27, 2024).

Continuing to enforce section 19:13-7 (at issue here) and not section 19:23-11 (struck down in *Arsenault*) would mean burdening third-party candidates for the general election while imposing a less-stringent residency requirement for those seeking to secure their candidacy through the primary election. That differential burden would be inappropriate without "assurance that the Legislature would have intended" such a result. *Affiliated Distillers Brands Corp. v. Sills*, 289 A.2d 257, 259 (N.J. 1972). But there is no such assurance here, because the Legislature chose no such scheme.

Section 19:23-11's residency requirement is materially indistinguishable from section 19:13-7's residency requirement. Both provisions regulate nomination petitions, which all candidates must submit. That is true whether such petitions are submitted by

candidates seeking to appear in a primary election leading to a general election (under section 19:23-11) or by candidates seeking to run as third-party candidates in the general election itself (under section 19:13-7). And the Legislature enacted both provisions as part of the same law. *See* 2014 N.J. Laws ch. 83 §§ 1-2. So nothing in the text, structure, or context of New Jersey's election statutes "clearly indicate[s] a legislative intention" that section 19:13-7 should apply any differently than section 19:23-11. *Sills*, 289 A.2d at 259. Instead, the Legislature's enactment should be treated "as an entity" to avoid "usurp[ing] the legislative function of lawmaking." *Id.* For that reason, the Secretary properly decided to include Leguia on the ballot.

## IV. Leguia Is Not Likely To Succeed On The Merits Of These Two Federal Constitutional Claims.

While the Secretary sought to include Leguia on the ballot for the reasons discussed above, she cannot succeed on the merits by showing that section 19:13-7 violates the First or Fourteenth Amendment. The flexible *Anderson-Burdick* test applies to both claims. *See Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138 (3d Cir. 2022) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992) and explaining their analyses apply to various constitutional challenges in the elections context). That standard recognizes that "[a]s a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). So the "government must play an active role in structuring elections." *Burdick v. Takushi*, 504 U.S. at 433. Such regulation, however, "inevitably

affects—at least to some degree" individual liberties such as the "individual's right to vote" or rights to free association or free speech. *Anderson*, 460 U.S. at 788.

*Anderson-Burdick* creates a framework that is "more flexible than the rigid tiers of scrutiny under a traditional" First or Fourteenth Amendment analysis. *Mazo*, 54 F.4th at 137. Under *Anderson-Burdick*, the Court must "weigh the character and magnitude of the burden the State's rule imposes on [constitutional] rights against the interests the State contends justify that burden," and "consider the extent to which the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (quoting *Burdick*, 504 U.S. at 434). "Regulations imposing severe burdens on plaintiffs' rights" must satisfy strict scrutiny—that is, they must "be narrowly tailored and advance a compelling state interest." *Id.* "Lesser burdens, however, trigger less exacting review, and a State's important regulatory interest will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* Applying *Anderson-Burdick* here, New Jersey's "important regulatory interests" are "sufficient to justify the restrictions." *Mazo*, 54 F.4th at 145.

### A. The Residency Requirement Complies With The First Amendment.

Section 19:13-7's residency requirement survives First Amendment scrutiny. To start, Leguia is wrong to argue that section 19:13-7 is subject to strict scrutiny. TRO Br. (ECF No. 2-1) at 5. Because the residency requirement does not impose a "severe" burden on anyone's rights, *Timmons*, 520 U.S. at 358, it receives more deferential review, *Mazo*, 54 F.4th at 137. To be sure, the burden of obtaining in-state circulators is not minimal. But there are millions of voter-eligible New Jerseyans available to circulate petitions. And there is no evidence to suggest that a substantial number of eligible vot-

ers would be unable to circulate their petitions, or that a substantial number of candidates would be unable to have their petitions circulated. So § 19:13-7's residency requirement is not so restrictive as to "drastically reduce[] the number of persons" available "to circulate petitions." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 190 (1999).

That distinguishes this case from other cases in which courts have struck down dissimilar requirements. Section 19:13-7 does not limit the pool of circulates to *registered* voters like the law invalidated in *Buckley*. *See, e.g.*, *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 617 (8th Cir. 2001) (similarly distinguishing *Buckley*). And because section 19:13-7 permits voter-eligible individuals residing anywhere in the State to act as petition circulators, there are millions of people who can do so. That makes this case unlike the law invalided in *Lerman v. Bd. of Elections in the City of New York*, 232 F.3d 135, 147 (2d Cir. 2000) (noting that residency requirement would render 99.5 percent of all members of the petitioner's party in the state ineligible).

To the extent other courts have invalidated circulator-residency requirements, their analysis is unpersuasive. The Third Circuit's non-precedential opinion in *Wilmoth v. Sec'y of State of N.J.*, 731 F. App'x 97 (3d Cir. 2018) proves the point. That case—which led to the district court order striking down section 19:23-11 in *Arsenault*—lacked the benefit of later (precedential) Third Circuit opinions explaining when strict scrutiny should apply to election-related regulations. *Compare Wilmoth*, 731 F. App'x at 102, *with Mazo*, 54 F.4th at 145 *and Eakin v. Adams Cnty. Bd. of Elections*, 149 F.4th 291, 304 (3d Cir. 2025). Instead, *Wilmoth* simply noted that "a consensus has emerged" in applying strict scrutiny to circulator-residency requirements. 731 F. App'x at 102. But *Wilmoth*'s

"consensus" was built on an unstable foundation. Some of the cases in that "consensus" contained little analysis, simply also noting a "consensus." *See, e.g.*, *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013). And other cases in that "consensus" had inappropriately applied *Buckley*'s analysis of voter-*registration* requirements to pure residency requirements. *Compare Buckley*, 525 U.S. at 197, *with Yes On Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1028 (10th Cir. 2008) *and Nader v. Brewer*, 531 F.3d 1028, 1036 (9th Cir. 2008). Indeed, *Buckley* explicitly "assum[ed]" that a pure "residence requirement would be upheld as a needful integrity-policing measure." 525 U.S. at 197. As one Justice explained, a voter-registration requirement is unconstitutional specifically *because* "the State's asserted interest could be more precisely achieved through a residency requirement." *Id.* at 211 (Thomas, J., concurring in the judgment). And in any event, *Buckley* did not apply strict scrutiny to petition-circulator requirements. *Id.* at 197. This Court should not do so either.

Because the burden of section 19:13-7's residency requirement is not "severe," the State's "asserted regulatory interests" need only be "sufficiently weighty" to justify the burden imposed. *Mazo*, 54 F.4th at 153. That review "is quite deferential," and does "not require elaborate, empirical verification of the weightiness of" the State's justifications. *Id.* Here, it is enough that section 19:13-7 promotes the State's legitimate regulatory interest in ensuring that petition circulators are held responsible for their actions in New Jersey courts and before the State's local election officials. New Jersey empowers its local officials to subpoena witnesses and gather testimony in the course of investigating any potential violation of the election laws. N.J. Stat. Ann. § 19:32-6. So by limiting circulators to New Jersey residents, the State ensures that local election officials

may effectively exercise those powers to ensure the integrity of New Jersey elections. Accountability and integrity are real concerns: in one circumstance, two Utah residents involved in petition irregularities fled North Dakota, leaving that matter unresolved. *See Jaeger*, 241 F.3d at 616-17. To ensure that this situation does not occur in New Jersey, section 19:13-7 reasonably requires circulators to be New Jersey residents that can answer to New Jersey investigators and courts.

### B. The Residency Requirement Complies With The Fourteenth Amendment.

Leguia also argues that applying a residency requirement only to third-party circulators—rather than to circulators for all parties—violates the Fourteenth Amendment. As explained above, the State agrees that the Legislature never in fact intended such a disparity between third-party circulators and circulators for major parties, which reinforces why sections 19:13-7 and 19:23-11 are inseverable. *See supra*, at 9-10.

But as a matter of this particular federal constitutional claim, it is not unconstitutional to apply different circulator-residency requirements for third-party candidates and major-party candidates. As explained above, section 19:13-7's residency requirement itself does not impose a major burden on parties or campaigns. *See supra*, at 11-13. And that burden is no worse just because (following *Arsenault*) *other* candidates need not use in-state circulators. True, those other candidates are from the two major parties seeking to appear in a primary election leading to a general election. But "[l]aws that give modest preferential treatment to major political parties at the expense of minor parties may be constitutionally firm." *Mazo*, 54 F.4th at 147. Although States cannot

make it impossible for minor-party candidates to appear, *id.* at 146-47, courts have routinely upheld requirements reflect "obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding different petition thresholds for each); *see also Mazo*, 54 F.4th at 147 (collecting cases).

Under *Anderson-Burdick*'s flexible scrutiny, even though the Legislature did not intend as much, New Jersey could have sufficient regulatory interests in applying a circulator-residency requirement to candidates seeking to run as third-party candidates in the general election itself (under section 19:13-7) without applying the same requirement to candidates seeking to appear in a primary election leading to a general election (under section 19:23-11). For example, candidates who petition their way onto the general election ballot can submit their signatures as late as the day New Jersey's primary election is held. *See* N.J. Stat. Ann. § 19:13-9. By contrast, candidates running in the primary must submit their petitions 71 days earlier, *id.* § 19:23-14, and even after a primary election, a party committee can replace a nominee who chooses not to appear on the general election ballot, *see id.* § 19:13-20. These provisions give a much longer window for parties and election officials to remedy circulator-related misconduct for major-party candidates. Similarly, the Legislature may have more reason to trust out-of-state circulators of major-party candidates because the major parties are repeat players in elections with every incentive to follow state election law and the established infrastructure to do so. Any or all of these rationales could satisfy the *Anderson-Burdick* test.

But that is entirely hypothetical. Just because the Legislature may constitutionally impose different circulator requirements on major-party candidates and third-party candidates, that does not mean the Legislature intended to do so. To the contrary, as discussed above, the Legislature intended all candidates to be treated equally.

## CONCLUSION

The Secretary takes no position on Plaintiff's motion.

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Nathaniel F. Rubin
Nathaniel F. Rubin
Deputy Attorney General

## CERTIFICATE OF SERVICE

I certify that on August 17, 2026, I electronically filed the foregoing Response to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction and accompanying papers with the Clerk of the United States District Court for the District of New Jersey. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.

Dated: August 17, 2026 /s/ *Nathaniel F. Rubin*