State of New Jersey
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ 08625

MIKIE SHERRILL
*Governor*

DR. DALE G. CALDWELL
*Lt. Governor*

JENNIFER DAVENPORT
*Attorney General*

JEREMY M. FEIGENBAUM
*Solicitor General*

August 21, 2026

Zahid N. Quraishi
U.S. District Judge, District of New Jersey
U.S. Courthouse
402 E. State Street, Room 4000
Trenton, NJ 08608

**Re: *Lana Leguia v. Dr. Dale G. Caldwell*, No. 26-cv-10263 (ZNQ) (TJB).**

Dear Judge Quraishi:

We represent the Secretary of State. Pursuant to the Court's letter at ECF No. 14, the parties have conferred and jointly provide the Court with the following proposed schedule for the preliminary injunction hearing on Tuesday, August 25. Because the parties continue to disagree about certain aspects of the schedule and the appropriateness and necessity of certain testimony, the parties have also set forward separately their continued points of disagreement.

**<u>Agreed-upon schedule:</u>**

- Plaintiff's opening statement: 20 minutes.
- Defendant's opening statement: 20 minutes.
- Intervenor-Defendant's opening statement: 20 minutes.
- Lana Leguia: 30 minutes direct, 30 minutes cross. Testimony regarding her candidacy; organization and conduct of her nominating-petition drive; selection and use of petition circulators; her understanding of the circulator requirements; her knowledge of and reliance upon the State's post-Arsenault treatment of nonresident circulators; the absence of notice before the filing deadline that signatures collected by nonresident circulators would be rejected; the steps she would have taken had she received such notice; her ability to obtain sufficient signatures through resident circulators had she been given notice; and the resulting burdens upon her candidacy, political association, and ballot access.
- Barry Bender: 30 minutes direct, 30 minutes cross. Testimony regarding his experience with alternative-party and independent-candidate nominating petitions in New Jersey; his knowledge and experience concerning the use of

resident and nonresident petition circulators following Arsenault; the practical operation of petition drives; the availability and selection of circulators; and the burdens imposed by a circulator-residency restriction.

- Geoff Sebesta: 30 minutes direct, 30 minutes cross. Testimony regarding the witness's circulation of nominating petitions for Lana Leguia; interactions with New Jersey voters; the circumstances under which signatures were obtained; ability to witness and authenticate petition signatures and comply with petition requirements; willingness and ability to submit to legal process concerning the petitions circulated; and the burden imposed by the residency requirement upon petition circulation and political advocacy.
- Steven Welzer: 30 minutes direct, 30 minutes cross. Testimony regarding his experience with the Green Party and alternative-party political activity in New Jersey; nominating-petition drives; the use and availability of petition circulators; his knowledge and experience concerning the State's treatment of nonresident circulators following Arsenault; reliance by alternative political parties and candidates upon that administration; and the practical burdens a residency requirement imposes upon alternative political parties, candidates, members, and organizing.
- A Libertarian Voter Who Signed Leguia's Petition, *to be identified by Plaintiff*: 30 minutes direct, 30 minutes cross. Testimony regarding the witness's status as a Libertarian voter; signing of Lana Leguia's nominating petition; the circumstances under which the petition was signed; the witness's support for Leguia's candidacy and desire to vote for the candidate of the witness's choice; interaction with the petition circulator; and the effect upon the witness's voting, political, and associational interests of invalidating an otherwise-valid petition signature and excluding Leguia from the ballot solely because the circulator was not a New Jersey resident.
- Wade Hale: 30 minutes direct, 30 minutes cross. Testimony regarding the deadline to finalize the ballot for New Jersey's Seventh Congressional District, and whether that deadline can be delayed.
- Hon. Afzal "Al" Barlas: 30 minutes direct, 30 minutes cross. Testimony regarding personal experience conducting nominating petition drives and selecting petition circulators as a political leader and candidate; personal experience as a Chief of Staff to Senator, including review of legislation and understanding of Legislative intent behind P.L. 2014, Ch. 83; personal experience running petition drives pre- and post-adoption of P.L. 2014, Ch. 83; direct observations of application of circulator residency requirement.

**<u>Plaintiff's Statement:</u>**

Plaintiff's two principal arguments are: (1) N.J.S.A. 19:13-7 is unconstitutional on its face insofar as it imposes a New Jersey residency requirement upon circulators of direct-nomination petitions, because petition circulation constitutes core political speech and the residency restriction cannot survive the constitutionally required scrutiny; and (2) independently, Plaintiff Lana Leguia detrimentally relied upon the conduct and established post-Arsenault practice of New Jersey election officials during the approximately five years preceding her 2026 petition drive, during which the Secretary did not enforce § 19:13-7's residency requirement. Plaintiff will show that she received no notice before the filing deadline that the State would reverse that practice and that, had she been given such notice, she could and would have used New Jersey-resident circulators and obtained sufficient qualifying signatures. This reliance and lack of fair notice are relevant to Plaintiff's constitutional claims and to the character and magnitude of the burden imposed by the State's

application of the residency requirement.

Plaintiff agrees that the preliminary-injunction hearing should proceed on an expedited and focused basis. Plaintiff intends to present testimony directed principally to the character and magnitude of the constitutional burdens imposed by the circulator-residency requirement, the actual operation of petition circulation in New Jersey, and Plaintiff's reliance upon the State's longstanding post-Arsenault administration of the residency requirement.

The Secretary's present submission materially narrows the factual dispute. The Secretary affirmatively states that "the Secretary has not enforced § 19:13-7's residency requirement in the years following Arsenault." Accordingly, Plaintiff does not believe extensive testimony from State officials concerning the fact of that post-Arsenault non-enforcement is necessary if the parties and the Court treat that fact as undisputed.

The Secretary's post-Arsenault non-enforcement is relevant to Plaintiff's claims. Plaintiff will present evidence that she conducted her nominating-petition drive against the backdrop of the State's established administration of the circulator requirements; that she relied upon that course of conduct; that she received no notice before the petition deadline that the residency requirement would instead be applied to invalidate signatures collected for her candidacy; and that, had she received such notice, she could and would have used New Jersey-resident circulators and obtained sufficient qualifying signatures before the deadline.

That evidence bears directly upon the burden actually imposed upon Plaintiff. Otherwise-valid signatures of New Jersey voters were invalidated because of the residence of the persons who circulated the petitions, after the petition deadline had passed and Plaintiff no longer had an opportunity to alter her conduct or cure the asserted deficiency.

Plaintiff further disagrees with the Secretary's contention that the relevant constitutional questions can be resolved without consideration of the factual burdens imposed by the residency requirement. Petition circulation implicates political expression and association, and Plaintiff is entitled to establish the actual burden the challenged restriction places upon candidates, circulators, alternative political parties, and voters. Plaintiff expressly preserves her position concerning the appropriate level of constitutional scrutiny and does not concede that the challenged restriction imposes merely a "minimal" burden.

Plaintiff's witnesses are offered for that limited purpose. Their testimony will address the practical operation of petition drives, the availability and use of circulators, reliance upon the State's post-Arsenault practice, and the concrete effects of the residency restriction upon political participation and ballot access. Plaintiff will endeavor to avoid cumulative testimony and does not intend to call witnesses merely to establish matters that the parties can stipulate are undisputed.

To the extent the Court determines that the Secretary's representation concerning post-Arsenault non-enforcement establishes that enforcement history for purposes of the preliminary-injunction hearing, Plaintiff does not presently seek additional testimony from a State official merely to prove the same historical fact.

Finally, Plaintiff requests oral closing arguments, limited to twenty minutes per party, immediately following completion of the evidence. Given the election-related time constraints and the need for prompt resolution of Plaintiff's request for preliminary injunctive relief, oral summations will permit the matter to be submitted to the Court without the additional delay inherent in post-hearing written submissions.

**<u>Intervenor-Defendant's Statement:</u>**

The Intervenor-Defendant wishes to submit a written closing statement in lieu of an oral summation. Because this letter is supposed to be limited to procedural issues, the Intervenor-Defendant declines to engage in argument concerning the application of the law to the proposed testimony, which we view as an attempt to put additional briefing before the Court.

The Court's August 17th Letter Order requires the State to present a witness "with knowledge of the purpose of the residency requirement and the State's enforcement of such requirement in a primary election vs. general election." To date, only argument of counsel has been presented to any court on this issue, as distinguished from factual information from a witness with personal knowledge. That matters because the "enforcement" of the law by the Division of Elections, and what it means to "enforce" it, requires a detailed examination of the facts since it appears that the Division's actions and inactions were based upon a misunderstanding of the law and were not publicly communicated. The State's refusal to comply with the Court's Order prevents the parties from developing a record, the Court from analyzing the claims asserted by Plaintiff and the Defendant-Intervenor from responding to those claims. The State's assertion that the Defendant-Intervenor should instead present testimony on information that is in the State's possession is improper.

The State does not have the right to withhold relevant evidence that falls within the scope of discovery, which the parties can obtain in the normal course using the tools available under the F.R.C.P. and Local Rules. That is particularly true here, where the Court's schedule does not allow for any discovery prior to the hearing. The State's refusal to provide this basic-level information proves the point that no injunction can issue in this case without the parties having an opportunity to participate in discovery and develop a complete factual record

**<u>Defendant's Statement:</u>**

The Secretary understands Plaintiff to prefer oral closing statements of no more than 20 minutes each, and Intervenor-Defendant to prefer subsequent written statements in lieu of oral closing statements. The Secretary has no preference between these two options.

The Secretary does not believe that testimony about the enforcement history or non-enforcement history of N.J. Stat. Ann. § 19:13-7's residency requirement is relevant to the merits of Plaintiff's constitutional arguments. The Secretary therefore does not intend to call a witness to testify to that history, and objects to the parties' doing so.

For at least three reasons, the Secretary does not intend to proffer a witness to testify about "the purpose of the residency requirement," or "the purpose of" "the State's enforcement of such requirement in a primary election vs. general election."

First, Leguia's First and Fourteenth Amendment arguments present purely legal questions that do not require fact testimony. Courts regularly resolve claims subject to *Anderson-Burdick* analyses without evidentiary records. *See, e.g.*, *Mazo v. Way*, 551 F. Supp. 3d 478, 507 (D.N.J. 2021) (dismissing claim under *Anderson-Burdick* at pleading stage and rejecting notion that State's interests need be supported by empirical verification), *aff'd sub nom. Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 153 (3d Cir. 2022) (similar); *see also, e.g.*, *Daunt v. Benson*, 999 F.3d 299, 313 (6th Cir. 2021) (affirming dismissal under *Anderson-Burdick* at Rule 12(b)(6) stage); *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 718 (4th Cir. 2016) (same). And although this case's preliminary-injunction posture allows for evidentiary submissions, testimony at a hearing is unnecessary "if the movant is proceeding on a legal theory

which cannot be sustained." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990). That is true where, as here, the plaintiff's constitutional arguments fail as a matter of law.

To the extent that fact evidence can play a role in an *Anderson-Burdick* analysis, a threshold evidentiary question is the burden faced by the plaintiff. *See also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 200 (2008) (where State identified legitimate and weighty justifications in litigation, plaintiffs bore "a heavy burden of persuasion"); *Mazo*, 54 F.4th at 154 (affirming at 12(b)(6) stage "[b]ecause these [state] interests are all important, they need only outweigh the minimal burden imposed by the [challenged] requirement"). Where, as here, the burden faced by the plaintiff is minimal, facts about the legislative purpose behind a statute and evidence about means-end tailoring are even less likely to aid the court. *See Crawford*, 553 U.S. at 191, 204 (state interest identified in litigation in preventing voter fraud and protecting voter confidence supported restriction, notwithstanding fact dispute over whether restrictions were actually motivated by partisan concerns); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) ("Nor do we require elaborate, empirical verification of the weightiness of the State's asserted justifications."); *Eakin v. Adams Cnty. Bd. of Elections*, 149 F.4th 291, 316 n.41 (3d Cir. 2025) (noting *Crawford*'s applicability where there is "a logical and obvious connection" between a restriction and a state interest); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96 (1986) ("Legislatures…should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights."). This is especially true when there are examples "around the nation" of the misconduct a state restriction may prevent. *Eakin*, 149 F.4th at 316 n.41. And that is true here. *See* Secretary's Response Br. (ECF No. 12) at 14 (citing *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001) for example of absconding petition circulators).

Second, even if fact testimony could be useful to Plaintiff's First and Fourteenth Amendment arguments, the Secretary is not in a tenable position to provide that testimony. As to "the purpose of the residency requirement," that is a legal question only requiring an examination of the strength of the State's interests, not the "motivation for the votes of individual legislators." *Crawford*, 553 U.S. at 204; *Frank v. Walker*, 768 F.3d 744, 755 (7th Cir. 2014) (same). As to "the purpose of" "the State's enforcement of such [residency] requirement in a primary election vs. general election," the Secretary has not enforced § 19:13-7's residency requirement in the years following *Arsenault*. That is clear from the Secretary's stay denial, *see* Rubin Decl. (ECF No. 12-1) Ex. 3 at 3-4, and the Secretary's previous filing in this case, *see* ECF No. 12 at 2, 7. And as the Secretary explained, § 19:13-7 (at issue here) is legally inseverable from § 19:23-11 (struck down in *Arsenault*), so he does not believe there should be any difference in "enforcement of such [residency] requirement[s] in a primary election vs. general election." The Secretary therefore cannot provide any factual testimony about the "the purpose of" differing enforcement that has never existed.

Third, to the extent that other parties disagree with the Secretary and believe that there is a factual record to be built regarding § 19:13-7 and its enforcement's purpose, the Secretary has no objection to those parties doing so. The Secretary has accordingly consented to the Committee's intervention, and likewise has no objection to the Committee presenting its own witnesses and testimony regarding the purpose of the residency requirement, and any hypothetical enforcement of the requirement in general elections but not primary elections.

Respectfully yours,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ *Nathaniel F. Rubin*

Nathaniel F. Rubin
Deputy Attorney General
nathaniel.rubin@njoag.gov

cc: All Counsel of Record