New Jersey
Appleseed

August 28, 2026

Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re: Lana Leguia v. Dr. Dale G. Caldwell, et al.,
Civil Action No. 3:26-cv-10263-ZNQ-TJB

Dear Judge Quraishi:

Pursuant to the Court's August 27, 2026 Text Order, Plaintiff Lana Leguia ("Plaintiff" or "Leguia") respectfully submits this supplemental letter brief addressing whether New Jersey's Entire Controversy Doctrine ("ECD") precludes the constitutional claims asserted in this action. It does not.

The ECD is an equitable doctrine, codified in N.J R. 4:30A, intended to prevent unfair claim-splitting, encourage conclusive litigation determinations on the merits, and promote party fairness and judicial efficiency. The doctrine requires all parties in an action to raise all claims they have against each other whether capable of assertion by complaint, counterclaim or cross-claim. The doctrine also does not apply to bar unripe claims that have not accrued at the time of the original action. This case presents neither unfair claim-splitting, the withholding of ripe claims from a plenary action initiated or controlled by Plaintiff, nor fragmentation of litigation. This federal action is the first time that Plaintiff has been able to assert her claims against the Secretary that did not arise until the N.J. Appellate Division determined that the Secretary was not authorized to implement a policy of accepting nominating petitions circulated by out-of-state residents. As will be established, *infra*, to apply the ECD under the totality of the circumstances herein would be unfair to Leguia and would not promote any of the doctrine's objectives. *E.g.*, *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 605–07 (2015); *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 70–74 (2002). Especially, since this is the first time that she is adverse to the Secretary.

## STATEMENT OF RELEVANT FACTS

This matter was initiated by the NJ Republican State Committee ("NJRSC") via a challenge to the Secretary of State's ("Secretary") decision to accept Plaintiff's nomination

New Jersey Appleseed
Public Interest Law Center of New Jersey
23 James Street
Newark, New Jersey 07102

Phone: 973.735.0523; Cell: 917-771-8060
Email: renee@njappleseed.org
Website: www.njappleseed.org

petition as valid. As a first step in such challenge, a hearing was held before an Administrative Law Judge ("ALJ") on zoom, where Plaintiff and her counsel were present. There were no witnesses, and no signature match challenges. The NJRSC stated its position, and Plaintiff defended the Secretary's decision based on his policy to permit out-of-state circulators post the *Arsenault* decision finding the in-state residency requirement in N.J.S.A 19:23-11 unconstitutional and extending that decision to apply to petitions submitted under N.J.S.A. 19:13-7. The ALJ said making any conclusions of law regarding the constitutionality of N.J.S.A. 19:13-7 was "above his pay-grade," and he rejected Plaintiff's petitions. However, the Secretary did not accept his decision, placing Leguia on the ballot.

The NJRSC then appealed the Secretary's final agency decision, on an emergent basis. Both the Secretary and Leguia were named Respondents. At such time, Leguia had no claims against the State. She was in the posture of defending the State's decision. In such a prerogative writ action, it was the NJRSC's obligation to produce the transcript of the ALJ hearing, and the obligation of the Secretary to produce the record, which would have consisted of any documents presented during the administrative hearing or any records substantiating his review of the petition. Given the emergent nature of the proceeding, it does not appear that any documents other than the Secretary's decision and denial of a TRO were produced. Neither Plaintiff nor the State filed Case Information Statements in which they would have specified issues raised in this action. The Appellate Division simply ordered a "limited accelerated briefing schedule" directed "solely" to whether the Secretary exceed his authority by refusing to enforce N.J.S.A. 19:13-7; and all three parties to the action briefed that one issue.

Soon thereafter, the Appellate Division held that the Secretary's policy and practice was not authorized, and it directed the Secretary to reverse its decision, precluding Leguia from appearing on the November General Election ballot. Plaintiff then petitioned for certification to the N. J. Supreme Court, who declined to accept the petition because Leguia was now raising for the first time the issue that the N.J.S.A. 19:13-7 as applied to her was unconstitutional. Implicitly invoking New Jersey court's issue exhaustion doctrine, the Supreme Court refused to hear any of Leguia's claims that the statute on its face or as applied to her was unconstitutional, because she did not raise them before the ALJ. But as noted above, she was a respondent before the ALJ and, at that time, had no claims against the Secretary who had accepted her nominating petitions and had deemed them sufficient.

The refusal of the N.J. Supreme Court to accept certification and consider her claims on the merits against the Secretary -- claims that arose only after the Appellate Court decision was rendered --- left Leguia with only one choice. She filed a complaint against the Secretary in federal court, which was her first pleading in any judicial or quasi-judicial forum alleging First Amendment, Equal Protection and Due Process claims. She is not appealing the Appellate Division's decision that addressed the claim asserted by the NJRSC, the party who had initiated the action in state court as well as within the state agency.

## I. Rule 4:30A And the ECD Does Not Require Preclusion Where Plaintiff Lacked A Fair and Reasonable Opportunity to Assert Her Claims in Prior Proceedings.

N.J.R. 4:30A provides that "[n]on-joinder of claims **required to be joined** by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by

the entire controversy doctrine." (emphasis added). Thus, the threshold question is not simply whether Plaintiff's present claims arise from related events, but whether they are claims that she was **required to join** in the ALJ or state court proceedings in which she previously appeared.

The N.J. Supreme Court has repeatedly emphasized that the ECD is equitable, not mechanical. In *Bank Leumi USA v. Kloss*, 243 N.J. 218, 228 (2020), the Court explained that the ECD "remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." (quoting *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 237 N.J. 91, 114 (2019)). More importantly, the Court instructed that: "a court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." *Id.* (quoting *Dimitrakopoulos*, 237 N.J. at 119). *See also Irish Pub v. Stover*, 364 N.J. Super. 351 (App. Div. 2003)(same).

The N.J. Appellate Division has expressed the same principle in terms particularly applicable here. In *Hillsborough Township Bd. of Educ. v. Faridy Thorne Frayta, P.C.*, 321 N.J. Super. 275 (App. Div. 1999), the court emphasized that "[p]reclusion should be a remedy of last resort" and that, in assessing fairness to the party whose claim would be barred, a court must determine whether that party "had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Id.* (citing *Olds v. Donnelly*, 150 N.J. 424, 446–47 (1997), and *Gelber v. Zito Partnership*, 147 N.J. 561, 565 (1997)). That "fair and reasonable opportunity" is precisely what was absent here.

First, Plaintiff did not commence the administrative proceeding held within the state agency; NJRSC challenged her nomination petition and Plaintiff appeared as respondent supporting the Secretary's decision. The proceeding was not a plenary action; rather an internal agency quasi-judicial hearing. Although Plaintiff identified the constitutional problem and mentioned *Arsenault v. Way*, 539 F. Supp. 3d 335 (D.N.J. 2021), the ALJ could not adjudicate the constitutionality of N.J.S.A. 19:13-7. That history demonstrates notice to all parties and the absence of gamesmanship; it does not establish an obligation to litigate affirmative federal constitutional claims in a forum incapable of deciding them.

*Long v. Lewis*, 318 N.J. Super. 449 (App. Div. 1999), is directly instructive on that point. There, the plaintiff did not raise her discrimination claim in an administrative claim that she later asserted in court. Nevertheless, the Appellate Division rejected an ECD bar, explaining: "[W]e do not read *Thornton* [*v. Potamkin Chevrolet*, 94 N.J. 1 (1983)] as holding that an administrative agency is always a forum of equal jurisdiction for purposes of the entire controversy doctrine." *Id.* at 457. Where the later judicial action afforded relief unavailable administratively, the court held that "for purposes of the entire controversy doctrine the [Merit System Board] and the court are not forums of equal jurisdiction under *Thornton*." *Id.* at 458. *Long* is additionally telling, because defendants there argued that the plaintiff could have preserved her judicial claim by filing a simultaneous Superior Court action while the administrative proceeding was pending. *Id.* at 458 n.1. The Appellate Division nevertheless declined to bar the subsequent claim. *Id.* at 459–60. Thus, *Long* provides no support for requiring Leguia to commence unnecessary protective judicial litigation merely because an administrative proceeding concerns related facts. *See also*

*Bank Leumi*, *supra*, 243 N.J. 233 (where NJ Supreme Court acknowledged that its decision not to apply the ECD could result in "more than one lawsuit arising from the same transactional facts," but nevertheless chose the rule that afforded "the greatest measure of fairness to litigants."). Requiring Plaintiff to sue after obtaining a favorable agency decision simply because NJRSC might later appeal would neither promote fairness nor conserve judicial resources. It would affirmatively encourage duplicative protective litigation—the very consequence the ECD is intended to avoid.

Moreover, in this case, the agency administrative process resolved the controversy in Plaintiff's favor: the Secretary rejected NJRSC's objection and determined Plaintiff's nomination petition legally sufficient. Leguia remained eligible for the ballot and there was no adverse Final Agency Decision for her to challenge. She simply had no constitutional claims to raise against the Secretary. In addition, under the circumstances, there is no notice or prejudice problem. *Long* held that "the notice requirement has not been considered applicable" in the unequal-forum cases and that, even assuming such a requirement applied, dismissal would be warranted only "if the lack of notice caused prejudice." *Id.*, 318 N.J. Super. at 459. Here, Plaintiff actually identified *Arsenault* and the constitutional issue that would arise if the Secretary's practice was not upheld at a later date. There is no prejudice to any party.

Accordingly, applying preclusion here would not accomplish any of the ECD's objectives; to the contrary, it would require Leguia, who prevailed before the state agency to commence parallel litigation before her claim arose in anticipation that her opponent might later succeed on an appeal and obtain reversal. Such result does not promote judicial efficiency.

## II. Plaintiff Had No Adverse Final Agency Decision to Challenge And Her Present Need For Affirmative Relief Materialized Only After the Agency's Policy Was Invalidated By the N.J. Appellate Division.

The chronology matters. Plaintiff was never removed from the ballot during the agency's administrative proceedings. The Secretary's June 11 Final Agency Decision rejected NJRSC's objection and determined Plaintiff's nomination petition legally sufficient. Leguia therefore prevailed in the administrative proceeding and remained eligible for the ballot. There was no adverse Final Agency Decision for Plaintiff to challenge. NJRSC—not Plaintiff—then appealed. The Appellate Division subsequently reversed that decision, and directed that NJRSC's objection under N.J.S.A. 19:13-7 be sustained and that Plaintiff be deemed ineligible. At that time, and only at that time, did Leguia's claims against the Secretary arise from his current and prospective implementation of N.J.S.A. 29:13-7, as written.

This chronology is particularly relevant to Plaintiff's Due Process/detrimental-reliance claim. Plaintiff alleges that for approximately five years following *Arsenault*, the State permitted independent candidates to use nonresident circulators; that she structured her petition effort in reliance upon that State practice; and that the contrary residency rule was ultimately imposed after the petition deadline, when she could no longer change circulators or obtain replacement signatures. In this way, Leguia's reliance became detrimental in the manner alleged in her FAC only when the Secretary's decision was vacated, and she was deemed ineligible after cure had become impossible. The ECD does not require her to institute affirmative litigation before the

injury for which she now seeks relief becomes apparent. *Wadeer*, *supra*, 220 N.J. at 606.

**III. The State Judicial Proceeding Did Not Provide A Fair Opportunity to Litigate Leguia's Constitutional Claims Nor Were Those Claims Determined On the Merits.**

With respect to the State judicial proceeding itself. Again, the NJRSC initiated the appeal, and again Plaintiff appeared as a respondent defending the Secretary's favorable decision. The Appellate Division itself expressly restricted the proceeding to determining NJRSC's contention that the Secretary exceeded its authority when refusing to enforce N.J.S.A. 19:13-7, as written. The Appellate Division thus focused the question before it on the Secretary's authority, not whether enforcement of N.J.S.A. 19:13-7 violated Leguia's federal constitutional rights. Plaintiff did not choose that limitation; the court imposed it.

Under *Hillsborough*, the pertinent fairness inquiry is whether Plaintiff "had a fair and reasonable opportunity to have fully litigated [her federal] claim in the original action." *Id., supra*, 321 N.J. Super. at 284. Assuming that the state proceeding is considered the original judicial action when determining the applicability of the ECD, an emergent appeal conducted on a court-described "limited record," under an accelerated briefing order directed "solely" to another discrete issue, was not a fair and reasonable opportunity to fully litigate Plaintiff's constitutional claims that at the start of the proceeding were not even ripe. The theoretical possibility that Leguia could have sought supplementation of the record, remand, or expansion of the appeal on anticipated claims, as the NJRSC has asserted in previous briefs, does not establish that Rule 4:30A required her to do so. Indeed, as noted above, the ECD does not apply to bar claims that have not accrued at the time of the original action.

Finally, when the Appellate Division reversed the Secretary's decision and first directed that Plaintiff be deemed ineligible, Leguia sought review by the N.J. Supreme Court review of the Appellate Division's decision, and tried to assert her inchoate cross-claim that the statute was unconstitutional as applied to her as candidate of the Libertarian Party. The Court declined review and so there was no adjudication of the merits. It is clear, the ECD does not apply to preclude successive action if the first action did not result in any adjudication on Leguia's claims. *See Woodward-Clyde v. Chem & P Sciences*, 105 N.J. 464, 473-75 (1987)(institution of successive action not barred if counterclaim in first action alleging same cause was dismissed for discovery failure); *Hillsborough*, *supra*, 321 at 286 (claims against architect never litigated).

In short, under the totality of the circumstance, fairness does not favor prelusion. As the court in *DiTrolio v Antiles* explained, "[f]airness is . . . a protective concept that focuses primarily on whether defendants would be in a better position to defend themselves if the claims against them had been raised and asserted in the first litigation." *Id*., 142 N.J. 253, 273 (1995). There is no reason to believe that the Secretary has been prejudiced by Leguia's initiation of the federal litigation. Rather it is the Secretary's positions taken in the state proceeding that have prejudiced Leguia, who ironically started that action on the same side as the Secretary.

Respectfully submitted,

/s/Renée Steinhagen
Renée Steinhagen

-and--

**JOSEPH A. FORTUNATO LAW OFFICE**
By: **/s/ Joseph A. Fortunato**
Joseph A. Fortunato, Esq.

Attorneys for Plaintiff Lana Leguia