**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LANA LEGUIA,<br><br>Plaintiff,<br><br>v.<br><br>DR. DALE G. CALDWELL, in his official capacity as Secretary of State of New Jersey,<br><br>Defendant. | Hon. Zahid N. Quraishi, U.S.D.J.<br><br>Civil Action No.: 26-10263 |

# DEFENDANT'S SUPPLEMENTAL BRIEF


JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

Attorney for Defendants
R.J. Hughes Justice Complex,
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
(609) 789-2889

Stephen Ehrlich
*Deputy Solicitor General*

Liza B. Fleming
Nathaniel F. Rubin
*Deputy Attorneys General*
On the Brief

# TABLE OF CONTENTS

PAGE

INTRODUCTION .......... 1

ARGUMENT .......... 1

CONCLUSION .......... 5

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Bank Leumi USA, Inc. v. Kloss*,
233 A.3d 536 (N.J. 2020) .......... 1, 5

*Kach v. Hose*,
589 F.3d 626 (3d Cir. 2009) .......... 4

*N.J. Republican State Committee, Inc. v. Leguia*,
No. C-662, 2026 WL 2323300 (N.J. Aug. 7, 2026) .......... 3

*In re Pet. of Elizabethtown Water Co.*,
527 A.2d 354 (N.J. 1987) .......... 3, 4

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .......... 3

*Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*,
105 F.4th 67 (3d Cir. 2024) .......... 1

*Wadeer v. N.J. Mfrs. Ins. Co.*,
110 A.3d 19 (N.J. 2015) .......... 2

**Statutes & Legislation**

N.J. Stat. Ann. § 19:13-7 .......... 1, 2, 3, 4

N.J. Stat. Ann. § 19:13-10 .......... 2

N.J. Stat. Ann. § 19:23-11 .......... 2, 4

## INTRODUCTION

New Jersey's entire controversy doctrine does not apply here. Key conditions for the doctrine are absent in this case: procedural limits in New Jersey administrative law meant Leguia could not in fact properly raise arguments about the constitutionality of section 19:13-7 in the earlier proceedings, and the constitutional claims she asserts here had thus not accrued. Those problems underscore an even more fundamental one. The entire controversy doctrine is equitable; courts need not and do not apply it where, as here, doing so would work a substantial unfairness to the parties or undermine judicial economy. Because that is true on these facts, the doctrine does not apply.

## ARGUMENT

The entire controversy doctrine is poorly suited to this case. The doctrine is a "claim and counterclaim joinder rule that requires parties to bring all claims and counterclaims that arise from related facts or the same transaction or series of transactions." *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 105 F.4th 67, 82 n.13 (3d Cir. 2024). New Jersey courts apply the doctrine to further its three fundamental purposes: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties in the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *Bank Leumi USA, Inc. v. Kloss*, 233 A.3d 536, 541 (N.J. 2020). At its core, the doctrine is an equitable one "whose application is left to judicial discretion" and "is based on factual circumstances of individual cases." *Id.* So "[a] court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair," or "would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and

efficiency." *Id.* Because "the polestar of the application of the rule is judicial fairness," the doctrine requires a litigant to have had "a fair and reasonable opportunity to have fully litigated [the claim] in the original action." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015). So it also "does not apply to … unaccrued claims." *Id.*

At least three reasons counsel against the doctrine here. First, New Jersey administrative law and procedure prevented Leguia from raising her constitutional claims in administrative proceedings before the Department of State or New Jersey state courts. Second, Leguia's claims could not have accrued before the resolution of the state court action. And third, applying the doctrine would be inequitable given the unique circumstances of this case.

First, as to procedure, Leguia lacked the opportunity to raise her challenge to the constitutionality of this statute during this particular petition process and the ensuing state appeal. Leguia's petition was a form document submitted to the Division of Elections that the Division treated, in accordance with New Jersey law, as presumptively valid until the Committee objected. *See* N.J. Stat. Ann. § 19:13-10. After the Committee's objection, the petition was referred to the Office of Administrative Law for a hearing, where the ALJ ruled that the constitutionality of section 19:13-7 was "simply outside the jurisdiction of the Office of Administrative Law." Aug. 17 Rubin Decl. (ECF No. 12-1) Ex. 1 at 6. So the ALJ stated that it had no power to review Leguia's constitutional arguments, meaning Leguia could not be barred by the ECD from failing to raise it. *Id.* After that, the Secretary of State's June 11 Final Decision declined to address the constitutionality of section 19:13-7. ECF No. 12-1 Ex. 2 at 2-6. And upon the Committee's

application for a stay, he reaffirmed that decision, explaining that "the residency requirement in [section] 19:23-11" is "materially indistinguishable from [section] 19:13-7," and that "nothing in the text, structure, or context of our election statutes indicate the Legislature intended" a "lopsided scheme" burdening "third-party general-election candidates while imposing a less stringent requirement on candidates seeking to secure their candidacy through a primary election." ECF No. 12-1 Ex. 3 at 3.

By declining to consider the constitutionality of section 19:13-7, the Department of State's administrative record foreclosed Leguia's ability to raise constitutional arguments on appeal. In New Jersey's courts, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that the action was based." *In re Pet. of Elizabethtown Water Co.*, 527 A.2d 354, 364 (N.J. 1987) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Here, because the Secretary's decision was not based on the unconstitutionality of section 19:13-7, Leguia could not defend the Secretary's decision on that basis. *See id.* For the same reason, the Appellate Division did not reach that question. ECF No. 12-1 Ex. 4 at 3-4. And the N.J. Supreme Court's subsequent denial of certification did not do so either; it simply left the Appellate Division's decision in place. *See N.J. Republican State Committee, Inc. v. Leguia*, No. C-662, 2026 WL 2323300, at *1 (N.J. Aug. 7, 2026).[1] Put simply, the Secretary did not opine on Leguia's

[1] Regardless, the constitutional question would not have been properly raised in the state court proceedings. While the N.J. Supreme Court noted that Leguia "could have" raised a constitutional challenge before the Superior Court, 2026 WL 2323300, at *1, it remained improper for her to do so in the context of defending the Secretary's decision.

constitutional arguments and therefore state law prevented her from defending the Secretary's decision on those grounds in state court. So, before this federal lawsuit, Leguia could not have raised her constitutional claims in these prior proceedings.

Second, as to accrual, Leguia also could not have raised her constitutional claims in the previous proceeding because they had not yet accrued. Section 1983 claims like Leguia's generally accrue "at the time the plaintiff suffers an injury." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Leguia's injury here is her exclusion from the ballot due to enforcement of section 19:13-7's residency requirement. *See* ECF No. 24 ¶ 49 (Count I alleging injury based on "[p]rospective enforcement of the residency requirement against plaintiff"); *id.* ¶¶ 46-56 (similar for Counts II and III). But the Secretary only planned to enforce section 19:13-7's residency requirement *after* conclusion of the state-court proceedings because the state court ordered him to do so. Before that point, the Division had never suggested to Leguia that it would enforce section 19:13-7's residency requirement. When Leguia submitted her petition, the Secretary's final agency decision approved her petition. And when the Committee appealed, the Appellate Division entered a stay that did not dissolve until the state Supreme Court's ruling. ECF No. 12-1 Ex. 4 at 1-4. So at no point before conclusion of the state-court proceedings was Leguia injured. Her constitutional claims therefore did not accrue such that she should have raised her constitutional arguments in those state-court proceedings.

Finally, applying the doctrine here would be inconsistent with the doctrine's equitable nature. As the Secretary explained in response to Leguia's TRO Motion, the particular equities of this case strongly favor Leguia. *See* ECF No. 12 at 5-8. Not only

would it be unfair to apply the doctrine where Leguia was unable to raise her constitutional arguments in the previous suit, but also because Leguia had guidance from the Division that the residency requirement would not in fact be enforced, so there was no reason to believe it required a constitutional challenge at all. *See, e.g.*, Aug. 26 Rubin Decl. (ECF No. 31) ¶¶52-58. Said another way, the guidance means that candidates like Leguia could not sensibly sue to enjoin the residency requirement; plaintiffs lack claims to seek injunctions against government agencies to prevent actions those agencies have specifically made clear they do not intend to take. Instead, candidates like Leguia properly moved forward with their petitions—petitions subject to only narrow administrative challenge. The Secretary has consistently viewed penalizing candidates for relying on such guidance as unfair. *See* ECF No. 12 at 7-8.

Applying the doctrine here would also promote the precise type of excess litigation that New Jersey courts discourage. Litigants who believe a statute unconstitutional, when faced with guidance the statute would not be enforced, would nonetheless have to affirmatively challenge the statute's validity, lest the entire controversy doctrine bar them from doing so in the future. That sort of risk has caused New Jersey's courts to refrain from applying the doctrine. *See, e.g.*, *Bank Leumi*, 233 A.3d at 231 (where party had successfully dismissed first action, doing so did not preclude it from bringing new claims that could have been counterclaims therein, to avoid requiring defendants to "respond with whatever claims they feel they can state at the moment when they might have preferred to pursue other means of resolution"). This Court should do the same.

**CONCLUSION**

The entire controversy doctrine does not apply to this case.

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Nathaniel F. Rubin
Nathaniel F. Rubin
Deputy Attorney General

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2026, I electronically filed the foregoing Defendant's Supplemental Brief and accompanying papers with the Clerk of the United States District Court for the District of New Jersey. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.

Dated: August 28, 2026 /s/ *Nathaniel F. Rubin*