**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**LANA LEGUIA,**

Plaintiff,

v.

**DR. DALE G. CALDWELL,** *in his official capacity as Secretary of State of New Jersey,*

Defendant.

Civil Action No. 26-10263 (ZNQ) (TJB)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Preliminary Injunction filed by Plaintiff Lana Leguia ("Plaintiff"). ("Motion", ECF No. 2.) Defendant Dr. Dale G. Caldwell ("Defendant") filed a response to the Motion.[1] ("State Resp.", ECF No. 12.) Intervenor-Defendant New Jersey Republican State Committee (the "NJRSC") filed an opposition to the Motion. ("NJRSC Opp.", ECF No. 23.) Defendant filed a reply to the NJRSC's opposition. ("State Reply", ECF No. 25.) Plaintiff filed a reply in further support of her Motion. ("Plf. Reply", ECF No. 27.) Pursuant to Federal Rule of Civil Procedure 65, the Court conducted an evidentiary hearing ("Hearing") on the record on August 25, 2026. (ECF No. 30; "Hearing Tr.") At the instruction of the Court, Defendant filed a Declaration of Counsel. (ECF No. 31.) On consent of the parties, Plaintiff and the NJRSC filed supplemental authority in further support of its positions. (ECF Nos.

[1] The Court notes that Defendant has titled his submission in response to the Motion as a "response" rather than an opposition. The Court infers this is because Defendant has stated that he takes no position on the Motion.

32–33.) The parties also filed supplemental briefing with respect to a legal issue raised by the Court after the hearing. (ECF Nos. 35–37.)

The Court has carefully considered the parties' submissions as well as the evidence and arguments presented at the Hearing. For the reasons set forth below, the Court will **DENY** the Motion for Preliminary Injunction.

## I. BACKGROUND

Plaintiff is the Libertarian candidate seeking placement on the November 3, 2026 General Election ballot for the New Jersey House of Representatives, New Jersey Seventh Congressional District. (First Amended Complaint ("FAC"), ECF No. 24 ¶ 1.)[2] Defendant Caldwell, in his capacity as Secretary of State, is the State's chief election officer. (*Id.* ¶ 2.)

By statute, New Jersey requires an independent candidate for the U.S. House of Representatives to submit a direct-nomination petition with at least 250 valid signatures to be placed on the ballot. (*Id.* ¶ 8) (citation omitted). Central to this case, a separate New Jersey statute, N.J.S.A. 19:13-7, requires that individuals circulating direct-nomination petitions ("circulators") be themselves eligible to vote in this state, which in turn requires that they be New Jersey residents.

On or before the June 2, 2026 deadline to do so, Plaintiff filed her petition bearing 759 signatures. (*Id.* ¶ 9.) The Division of Elections accepted 755 them. (*Id.*) However, 670 of the 755 accepted signatures were obtained by petition circulators who are not New Jersey residents.

---

[2] The Court stayed the deadline to respond to the Complaint so that the parties and the Court could focus on resolving the Motion for Preliminary Injunction rather than being distracted by briefing on oft-filed motions to dismiss. (ECF No. 14.) Without seeking leave or providing notice of any kind, Plaintiff filed a First Amended Complaint a week after that stay and only four days before the hearing. The opposing parties have not objected, presumably because Plaintiff filed it within twenty-one days of serving her original Complaint, and was therefore within her right under the Federal Rules of Civil Procedure to amend her pleading. *See* Rule 15(a)(1)(A). Still, the additions to the complaint, including a new Due Process claim, imposed an unexpected and unwelcome burden on the Court and the parties. Going forward, the Court will adjust its language when it stays the pleadings pending resolution of an emergent motion.

(*Id.* ¶ 10.) The NJRSC challenged Plaintiff's petition on the basis that the 670 signatures obtained by non-resident circulators violated N.J.S.A. 19:13-7. (*Id.* ¶ 11.)

The Office of Administrative Law ("OAL") conducted a hearing on June 9, 2026. The NJRSC and Plaintiff requested leave to brief the constitutionality of the residency restriction. (*Id.* ¶ 13.) The Administrative Law Judge ("ALJ") presiding over the hearing concluded that the OAL lacked jurisdiction to consider constitutional arguments. (*Id.* ¶ 14.) The ALJ applied N.J.S.A. 19:13-7 and recommended that the 670 signatures be excluded. (*Id.*) Defendant effectively overruled the ALJ's initial decision, rejected the NJRSC's residency objection, and accepted Plaintiff's nomination petition. (*Id.* ¶ 15.) Defendant based his conclusion on this Court's prior decision in *Arsenault v. Way*, 539 F. Supp. 3d 335 (D.N.J. 2021) that found unconstitutional a similar New Jersey statute requiring circulators of petitions for *primary* elections to be New Jersey residents. (*Id.* ¶¶ 15–16.) The Appellate Division reversed Defendant's decision finding Defendant lacked the authority to accept Plaintiff's nomination and place her on the ballot. The New Jersey Supreme Court denied Plaintiff's petitions.

## II. PROCEDURAL HISTORY

On August 14, the day after the Complaint and the emergent application were filed, the Court set a case management teleconference with counsel for the parties to be held the following Monday, August 17. In the meantime, the Court granted the NJRSC's request to join the conference, though it had not been named as a party. (ECF No. 7.)

The Court set August 25 as the date for a one-day hearing and emphasized that it sought an *evidentiary* hearing rather than mere oral argument from counsel. The intent of the hearing was to provide Plaintiff with a full opportunity to support her emergent application with testimonial evidence, to afford the NJRSC an opportunity to challenge Plaintiff's proofs and to introduce their

own evidence. In the meantime, to preserve Plaintiff's potential candidacy, the Court entered a temporary restraining order that enjoined Defendant from omitting Plaintiff as a candidate from the assorted preparations for the November 3, 2026 General Election ballot. (ECF No. 15.)

On August 25, the Court conducted the hearing. Plaintiff presented testimony from the following witnesses:

- Herself;
- Geoffrey Mark Sebesta, a professional, out-of-state petition circulator;
- Heinrich Johannes Matthias Aichem, Plaintiff's spouse, fellow member of the Libertarian Party, and in-state petition circulator; and
- Barry Bendar, Election Chair of the Green Party of New Jersey.

The NJRSC presented testimony from the Honorable Azfal Barlas, Assemblyman for New Jersey's 40th District.[3]

Based on the witnesses' demeanor, manner in which they testified, and the substance of their testimony, the Court found all of the witnesses credible. For the reasons set forth herein, however, the Court does not reach their testimony.

## III. SUBJECT MATTER JURISDICTION

Based on the nature of the constitutional claims asserted, the Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. §§ 1331 and 1343.

## IV. *ROOKER-FELDMAN* DOCTRINE

The NJRSC argues that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Plaintiff disagrees.

"A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). The *Rooker-Feldman* doctrine divests a district court of subject matter jurisdiction in "cases brought

[3] Defendant declined to present a witness. The Court instead accepted proffers from counsel at the hearing, which counsel later affirmed with his declaration. (Declaration of Nathanial R. Rubin, Esq., ECF No. 31.)

by state-court losers complaining of injuries caused by state-court judgments" and "inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). "[T]here are four requirements that must be met for the . . . doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were re1ndered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Abulkair v. Dir. of N.J. Dep't of Human Srvs.*, 474 F. App'x 82, 84 (3d Cir. 2012) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010)).

Here, there is no dispute that Plaintiff lost in state court or that the judgments were rendered before Plaintiff filed this suit. Accordingly, the first and third elements are met. The Court considers only the second and fourth elements of the four-part test under *Rooker-Feldman*.

### A. WHETHER PLAINTIFF IS COMPLAINING OF INJURIES CAUSED BY THE STATE COURT JUDGMENTS

Plaintiff contends her claims pre-date the Appellate Division's order. (Plf. Reply at 5–6.) Her claims are instead rooted in the executive branch's decision not to enforce N.J.S.A. 19:13-7 and her reliance on its express statements that the statute would not be enforced. (*Id.*) Plaintiff frames her injury not as "wrongdoing by the Appellate Division," but as "the present and prospective application of NJSA 19:13-7 to Plaintiff's already completed petition activity under circumstances which preceded the state court judgment." (*Id.* at 6.)

The NJRSC argues that Plaintiff's asserted injury — removal from the ballot — stems from the order from the Appellate Division enforcing the residency restriction under N.J.S.A. 19:13-7. (NJRSC Opp. at 13.) In the NJRSC's view, this is especially clear in this case because, prior to the Appellate Division's Order, Defendant had rejected the NJRSC's challenge to Plaintiff's

petition. (*Id.* at 13 n.3.) But for the Appellate Division's Order, Plaintiff would be on the 2026 General Election ballot.

What Plaintiff cites as the cause of her injury is better described as the likely rationale for *Defendant's* decision to accept her petition prior to the Appellate Division's order reversing him. But that is not the relevant test under *Rooker-Feldman*.

The Third Circuit has offered some guidance for assessing this element.[4] Notably, in *Great W. Mining & Min. Co. v. Fox Rothschild LLP* it pointed to a "[a] useful guidepost" of "the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." 615 F.3d 159, 167 (3d Cir. 2010) (citations omitted). In that regard, and despite Plaintiff's arguments to the contrary, the Court finds that Plaintiff's injury did *not* exist prior to the Appellate Division's order. Importantly, as the NJRSC emphasizes, before the Appellate Division interceded, Defendant had rejected the NJRSC's challenge to her ballot petition and Plaintiff was going to be listed on the General Election ballot. Had the state proceedings concluded without reaching the Appellate Division, Plaintiff would have therefore suffered no harm.

As a second measurement of causation recognized under *Great Western*, it is equally clear that it was the Appellate Division's order that "produced" Defendant's refusal. *See id.* Paraphrasing the Court of Appeals in *Great Western*, in this case the Appellate Division did not simply ratify, acquiesce in, or leave unpunished Defendant's prior decision. *See id.* (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005); *see also Merritts v.*

---

[4] At points in her reply briefing, Plaintiff critiques the NJRSC's reliance on decisions issued by the Third Circuit prior to the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.* in 2005. This Court too exercises caution in this regard because *Exxon* shifted the *Rooker-Feldman* landscape in many respects. The Court has therefore looked to post-*Exxon* decisions from the Court of Appeals where possible.

*Richards*, 62 F.4th 764, 778 (3d Cir. 2023) (finding element satisfied when "a judicial ruling, not a prior independent action by [defendants], caused [plaintiff's] legal injuries").

For these reasons, the Court finds that Plaintiff is complaining of an injury caused by the state court's judgments and therefore finds that the second element under the *Rooker-Feldman* doctrine is met.

### B. WHETHER PLAINTIFF IS INVITING THE DISTRICT COURT TO REVIEW AND REJECT THE STATE COURT JUDGMENTS

The NJRSC argues that Plaintiff's claims here are inextricably intertwined with the state adjudication such that her request for relief effectively invites this Court to reject the state judgments, satisfying the fourth element required to apply the *Rooker-Feldman* doctrine. (NJRSC Opp. at 14–17.) The NJRSC objects to Plaintiff's attempt to frame her claims as challenges to the constitutionality of the N.J.S.A. 19:13-7 rather than to the state court decision. (*Id.* at 16.) The NJRSC says Plaintiff is bringing as-applied claims that challenge the enforcement of the statute as to her, albeit on constitutional grounds. Given that the enforcement as to Plaintiff was the product of the state court decisions, the NJRSC argues her claims here are an attempt to attack the state court judgments and therefore fall within the scope of those forbidden under *Rooker-Feldman.*

Plaintiff couches her claims differently. She insists she is "not asking the Court to reject the Appellate Division's judgement that the Secretary had no authority to abstain from enforcing N.J.S.A. 19:13-7, as written." (Plf Reply at 7.) Rather, she "seeks a federal judicial determination of the constitutional issue that the Secretary himself could not decide (because there was allegedly no evidence in the record that the Attorney General had advised him) and that the Appellate Division expressly did not adjudicate." (*Id.*)

To be fair, the analysis for the fourth element of *Rooker-Feldman* is not any easy one. But there is one thing that the Third Circuit has tried to make abundantly clear: whether the Appellate

Division did or did not expressly adjudicate a claim Plaintiff raises now is not the question under *Rooker-Feldman*. In *Silverberg v. City of Philadelphia*, for instance, the Court of Appeals did its best to dispel that notion:

> "[a] federal complainant cannot circumvent [the *Rooker-Feldman* doctrine] by asserting claims not raised in the state[-]court proceedings or claims framed as original claims for relief." *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994). "If [a] district court is confronted with issues that are '*inextricably intertwined'* with a state judgment, the court is 'in essence being called upon to review [a] state-court decision,' and the originality of the district court's jurisdiction precludes such a review." *Id.* (emphasis added) (quoting *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)) (internal quotation marks omitted). In short, because Silverberg's complaint consists of claims that request "relief ... in the federal action [that] would effectively reverse the state decision or void its ruling," *see FOCUS*, 75 F.3d at 840 (citation omitted), his federal lawsuit satisfies the fourth element of the *Rooker-Feldman* doctrine.

847 F. App'x 152 (3d Cir. 2021) (emphasis in original). Prior to *Silverberg*, the Circuit had issued a similar warning, also in *Great Western*:

> When a federal plaintiff brings a claim, whether or not raised in state court, that asserts injury caused by a state-court judgment and seeks review and reversal of that judgment, the federal claim is "inextricably intertwined" with the state judgment. *See McCormick*, 451 F.3d at 394–95; *Davani*, 434 F.3d at 719; *Hoblock*, 422 F.3d at 86; *see also Bolden*, 441 F.3d at 1141 ("[T]he purpose of the term is to highlight that a challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings.").

615 F.3d at 170. Based on this guidance from the Third Circuit, the Court rejects Plaintiff's attempt to differentiate her claims.

The NJRSC's argument is the more persuasive one. Plaintiff's challenges here in the wake of the state court judgments fail because they are as-applied rather than facial.[5] The NJRSC's

---

[5] The Court notes that Plaintiff has been less than consistent with respect to whether her claims in this case challenge the constitutionality of N.J.S.A. 19:13-7 on its face or merely its application as to her. For the reasons set forth herein,

theory finds support in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the decision by which the Supreme Court effectively re-calibrated the federal courts' application of the *Rooker-Feldman* doctrine. 544 U.S. 280 (2005). In a relevant part of that decision, the Court harkened back to its original *Feldman* opinion and highlighted the difference between a federal plaintiff pursuing an as-applied challenge and one pursuing a facial challenge:

> "Challenges to the constitutionality of state bar rules," . . . "do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding." *Id.,* at 486, 103 S.Ct. 1303. Thus, the Court reasoned, 28 U.S.C. § 1257 did not bar District Court proceedings addressed to the validity of the accreditation Rule itself. *Feldman,* 460 U.S., at 486, 103 S.Ct. 1303. The Rule could be contested in federal court, this Court held, so long as plaintiffs did not seek review of the Rule's application *in a particular case. Ibid.*

---

the Court concludes that her challenges are as-applied, not facial. Confusingly, the original Complaint contains language in both directions, sometimes within the same paragraph. *See* Compl. ¶¶ 7, 21, 23, 38, 42, Prayer for Relief ¶ A. And when the Court sought clarification from Plaintiff's counsel at the hearing, counsel responded that Plaintiff's challenges were "both." (Hearing Tr. 22:22.) Counsel described the challenge as facial for the First Amendment claim (Count I) and as-applied for the Equal Protection and Due Process claims (Counts II and III, respectively). (Hearing Tr. 22:22–23:6). But Plaintiff's Moving Brief presents her challenge as an-applied one insofar as she "seeks prospective relief from enforcement of a statute that, as applied to her, burdens rights protected by the First and Fourteenth Amendments," (Moving Br. at CM/ECF page 2, and "asks for narrow, prospective relief: an order preserving her place on the ballot while this Court adjudicates whether the Secretary may constitutionally enforce N.J.S.A. 19:13-7 against her." (*Id.* at CM/ECF page 3.) The First Amended Complaint — filed after Plaintiff's Moving Brief and which this Court treats as dispositive of the scope of Plaintiff's claims in this matter because it is her operative pleading — almost uniformly frames all of Plaintiff's challenges as applied to her. *See* FAC ¶ 43 ("*N.J.S.A.* 19:13-7, <u>as applied</u> to invalidate otherwise valid signatures solely because the circulators reside outside New Jersey, substantially burdens Plaintiff's speech, association, ballot-access efforts, and the speech and association of her circulators and supporters.")(emphasis added); ¶ 47("New Jersey permits primary-election candidates to proceed without the materially similar circulator-residency restriction invalidated as applied in *Arsenault*, <u>while enforcement of N.J.S.A. 19:13-7 imposes that restriction upon Plaintiff</u> as an independent/alternative-party candidate seeking access to the general-election ballot.") (emphasis added); ¶ 56 ("Plaintiff is therefore entitled under 42 U.S.C. § 1983 to declaratory and prospective injunctive relief <u>preventing Defendant from enforcing the residency restriction against her 2026 petition</u>.) (emphasis added)." Perhaps most tellingly, the FAC's prayer for relief seeks no declaration that N.J.S.A. 19:13-7 is unconstitutional in the abstract, but instead "as applied to Plaintiff's direct nomination petition under the First and Fourteenth Amendments." (FAC, Prayer for Relief ¶ A.) *But see* FAC ¶ 28 ("The New Jersey courts did not consider or adjudicate the merits of Plaintiff's present facial and as-applied federal constitutional claims.") (which the Court accords less weight because it appears to be, in part, a copy of the original Complaint's paragraph 22).

544 U.S. at 286 (emphasis added).[6] *See also Mikhail v. Kahn*, 991 F. Supp. 2d 596, 618–19 (E.D. Pa. 2014) ("This distinction, in essence, comes down to as-applied challenges versus facial challenges and the difference between 'declaring' a state order, or application, of a rule or statute unconstitutional and declaring that rule or statute itself unconstitutional in an abstract sense. The former—only reachable by reviewing a state-court decision—is barred by *Rooker–Feldman;* the latter—unless barred by another doctrine, such as standing—is not.")

Based on the foregoing, the Court finds that the fourth element required to apply the *Rooker-Feldman* doctrine is met in this case and that it therefore lacks subject matter jurisdiction to consider Plaintiff's claims.[7]

## V. <u>PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>

To obtain any preliminary injunction, a plaintiff must show (1) she will likely succeed on the merits; (2) she will likely suffer irreparable injury; (3) the balance of equities favors her; and (4) the injunction serves the public interest. *See Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th

---

[6] For context, *Exxon* summarized the facts of *Feldman* as follows:

> The two plaintiffs in that case, Hickey and Feldman, neither of whom had graduated from an accredited law school, petitioned the District of Columbia Court of Appeals to waive a court Rule that required D.C. bar applicants to have graduated from a law school approved by the American Bar Association. After the D.C. court denied their waiver requests, Hickey and Feldman filed suits in the United States District Court for the District of Columbia. *Id.,* at 465–473, 103 S.Ct. 1303. The District Court and the Court of Appeals for the District of Columbia Circuit disagreed on the question whether the federal suit could be maintained, and we granted certiorari. *Id.,* at 474–475, 103 S.Ct. 1303.

544 U.S. at 285.

[7] The Court is aware that its conclusion in this regard means that it lacks the jurisdiction to consider the merits of Plaintiff's claims and therefore her Motion. For two reasons, the Court nevertheless proceeds further. First, the theoretical one: the *Rooker-Feldman* doctrine and preclusion doctrines are close cousins, and though the Court has done its level best here, it appreciates that the proper application of the former versus the latter has proven problematic for district courts. Second, the practical one: general election ballots must be finalized as soon as possible. To the extent the parties wish to consider seeking relief from this decision, further articulation of the undersigned's thinking may be of benefit to the parties and the Court of Appeals, given the shortened timeframe.

120, 126 (3d Cir. 2023). The first two prongs are "gateway factors," and are typically only considered when "the remaining two" of "these gateway factors are met[.]" *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

Where, as here, the preliminary injunction is "directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) (citing *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)). This is because it is generally understood that "a mandatory injunction is an 'extraordinary remedy to be employed only in the most unusual case.'" *Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) (citing *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972)). Accordingly, "the moving party's 'right to relief must be indisputably clear.'" *Id.* (quoting *Communist Party of Ind.*, 409 U.S. at 1235).

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

Perhaps due in part to the accelerated briefing schedule, none of the parties briefed the possible preclusive effects of the state court judgments. After the hearing and considering the parties' arguments and evidence, the Court ordered the parties to file supplemental briefs setting forth their positions as to whether New Jersey's Entire Controversy Doctrine ("the ECD") precludes Plaintiff from raising her claims in this matter. (ECF No. 34.) In its supplemental brief, the NJRSC seeks a mechanical application of the ECD and faults Plaintiff for missing opportunities to pursue her claims in state court. Both Plaintiff and Defendant argue that the ECD is an equitable one and should not be applied under the circumstances of this case. Defendant adds that Plaintiff could not have raised her constitutional claims previously because they had not yet accrued.

Based on the limited record before the Court, and for the reasons set forth below, the Court is persuaded that if the *Rooker-Feldman* doctrine does not prohibit the Court from considering Plaintiff's claims, the ECD raises sufficient questions that Plaintiff has not carried the elevated, "heavy burden" of an "indisputedly clear" right to the mandatory relief she seeks.[8]

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give a New Jersey state court judgment the same preclusive effect New Jersey would give it. *See Exxon Mobil*, 544 U.S. at 293; *D'Agostino v. Appliances Buy Phone, Inc.*, 633 F. App'x 88, 91 (3d Cir. 2015). Under the ECD, "[n]on-joinder of claims required to be joined . . . shall result in the preclusion of the omitted claims," subject to certain exceptions. *See* N.J. Ct. R. 4:30A. The ECD is "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods. Inc. v. C & W Unlimited, 109 F.3d 883*, 886 (3d Cir. 1997) (citations omitted). It "applies when (1) the judgment in the first action is valid, final, and on the merits; (2) there is identity of the parties, or the parties in the second action are in privity with those in the first action; and (3) the claim in the later action grows out of the same transaction or occurrence as the claim in the first action." *D'Agostino*, 633 F. App'x at 91 (citing *Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 591 A.2d 592, 599 (N.J. 1991)).

Were the application of the ECD as simple as applying these three rules, it would be straightforward in this case. Plaintiff does not, nor can she credibly, dispute that the judgment in the first action is valid, final, and on the merits. Nor does she dispute there is identity of the parties: herself, the NJRSC and Defendant have rejoined their struggle. The last feature is equally

[8] The Court articulates its conclusion in these terms based on the posture of the case. The ECD is an affirmative defense. *See Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 280 (3d Cir. 2016). The NJRSC, as the party at least nominally invoking it, bears the burden of establishing the ECD. Still, because Plaintiff is the party seeking a mandatory preliminary injunction, she bears the ultimate and elevated burden of proving a likelihood of success on the merits.

straightforward. Plaintiff's claims, both here and in the state proceedings, are rooted in the same facts: her earnest efforts to be included on the 2026 General Election ballot. But the ECD is not so mechanical, and as Plaintiff and Defendant observe, there is more at play. Still, Plaintiff ultimately fails to tally enough points to win.

Understanding why Plaintiff loses here requires acknowledging the reasons the ECD exists. The New Jersey Supreme Court has cited to the principle underlying the ECD and explicitly invoked notions of fairness:

> This doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy. We have previously expressed that the purpose of the entire controversy doctrine are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.
>
> In determining whether a subsequent claim should be barred under this doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding. There is no requirement that there be a commonality of legal issues.
>
> The polestar of the application of the rule is judicial fairness. In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties.
>
> Because [a] plaintiff should have a fair and reasonable opportunity to have fully litigated that claim in the original action, the doctrine does not apply to unknown or unaccrued claims. Put simply, [f]airness in the application of the entire controversy doctrine focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication.

*Wadeer v. New Jersey Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (citations omitted).

Even the NJRSC acknowledges that "Plaintiff first raised the constitutionality of N.J.S.A. 19:13-7, relying on *Arsenault v. Way*, 539 F. Supp. 3d 355 (D.N.J. 2021), at the earliest possible point in the process before the ALJ." (ECF No. 37 at 3.) The ALJ found that he lacked the authority to consider them and "denied her petitions." By the way Plaintiff describes the remainder of the proceedings, however, one would think she had been deprived of any opportunity to raise her arguments much less support them with evidence:

> The NJRSC then appealed the Secretary's final agency decision, on an emergent basis. . . . . The Appellate Division simply ordered a 'limited accelerated briefing schedule' directed 'solely' to whether the Secretary exceed his authority by refusing to enforce N.J.S.A. 19:13-7; and all three parties to the action briefed that one issue.
>
> Soon thereafter, the Appellate Division held that the Secretary's policy and practice was not authorized, and it directed the Secretary to reverse its decision, precluding Leguia from appearing on the November General Election ballot. Plaintiff then petitioned for certification to the N. J. Supreme Court, who declined to accept the petition because Leguia was now raising for the first time the issue that the N.J.S.A. 19:13-7 as applied to her was unconstitutional. Implicitly invoking New Jersey court's issue exhaustion doctrine, the Supreme Court refused to hear any of Leguia's claims that the statute on its face or as applied to her was unconstitutional, because she did not raise them before the ALJ. But as noted above, she was a respondent before the ALJ and, at that time, had no claims against the Secretary who had accepted her nominating petitions and had deemed them sufficient.
>
> The refusal of the N.J. Supreme Court to accept certification and consider her claims on the merits against the Secretary — claims that arose only after the Appellate Court decision was rendered — left Leguia with only one choice. She filed a complaint against the Secretary in federal court, which was her first pleading in any judicial or quasi-judicial forum alleging First Amendment, Equal Protection and Due Process claims. She is not appealing the Appellate Division's decision that addressed the claim asserted by the NJRSC, the party who had initiated the action in state court as well as within the state agency.

(ECF No. 35 at 2.) But in the context of the ECD, the question is not whether Plaintiff is appealing the Appellate Division's decision. It is whether she could have (and should have) continued to raise or at least preserved her arguments with respect to the constitutionality of N.J.S.A. 19:13-7 during the state proceedings. She did not. The NJRSC recounts the various procedural opportunities Plaintiff did not avail herself of:

> Plaintiff could have moved to supplement the record before the Appellate Division, N.J. Court R. 2:5-5(b), moved for a limited remand to develop a factual record, N.J. Court R. 2:9-1(b) or asked the Appellate Division to directly decide the constitutionality of N.J.S.A. 19:13-7[,] N.J. Court R. 2:10-5.3. She did not do so. Whether or not Plaintiff was aware of her options does not change the fact that those options were available.

(ECF No. 37 at 4.) The New Jersey Supreme Court highlighted these missteps when it denied Plaintiff's petition for certification seeking review of the constitutionality of N.J.S.A. 19:13-7:

> The Court having observed that petitioner could have, but did not, raise a constitutional challenge before the Superior Court, and further finding that petitioner's constitutional challenge has shifted from a facial challenge to an as-applied challenge and that no record to assess an as-applied challenge has been created in this matter;

(Order issued August 7, 2026, attached as Exhibit 5 to NJRSC Opp., ECF No. 23-6.)

Moreover, the fact that Plaintiff was not the plaintiff in the original state court proceedings is of no consequence. Courts routinely apply the ECD to federal plaintiffs hoping to pursue claims that should have been raised in the context of an underlying state foreclosure proceeding where the federal plaintiff was an adverse party. *See Arsenis v. M&T Bank*, App. No. 25-3115, 2026 WL 1816136, at *2 (3d Cir. June 24, 2026) ("Under that doctrine, claims 'germane' to a foreclosure action must be raised in the foreclosure proceeding itself.") (citation omitted).

That the potential unconstitutionality of N.J.S.A. 19:13-7 would have been a defense or crossclaim for Plaintiff to assert at various points in the state court proceedings rather than an affirmative claim is also irrelevant. The ECD casts a broad net. It "encompasses virtually all

causes, claims, and defenses relating to a controversy. . . . At a minimum, all parties to a suit should assert all affirmative claims and defenses arising out of the underlying controversy. [T]he doctrine also includes counterclaims and crossclaims." *Oliver v. Ambrose*, 705 A.2d 742 (N.J. 1998) (citations omitted).

For these reasons, the Court finds that Plaintiff did have "a fair and reasonable opportunity to have fully litigated her claim in the prior action." *Id.* at 396. Given that she "had sufficient information to have included the claims in the prior suit," the application of the ECD in this case is "not unfair." *Id.* Plaintiff has therefore failed to meet her burden of establishing a likelihood of success on the merits.

The unfortunate consequence of this conclusion is that the Court cannot reach Plaintiff's substantive issue: the constitutionality of N.J.S.A. 19:13-7. While it is tempting to go further, to do so in the face of these substantial doctrines, both *Rooker-Feldman* and the ECD, would be an exercise of judicial activism that has no place in the context of a last-minute constitutional challenge to a ballot concern. *C.f. Kim v. Hanlon*, Civ. No. 24-1098, 2024 WL 1342568 (D.N.J. March 29, 2024) (entering preliminary injunction in ballot structure case where no *Rooker-Feldman* or ECD issues were present), *aff'd*, 99 F.4th 140 (3d Cir. 2024).

**B. REMAINING FACTORS**

Given that Plaintiff has not established this first gateway factor for obtaining preliminary injunctive relief, the Court does not consider the remaining factors. *Reilly*, 858 F.3d at 179. In sum, the Court finds that Plaintiff has not carried the elevated, "heavy burden" of an "indisputedly clear" right to the mandatory relief she now seeks.

### C. OTHER ISSUES

Having ventured this far into the merits of Plaintiff's application despite having already concluded that the Court lacks subject matter jurisdiction, the undersigned feels compelled to echo Assemblyman Barlas's concerns with the decision not to enforce N.J.S.A. 19:13-7 in this case: "What I would say to you is that if what you're saying is that the Division of Elections is not enforcing a statute that is on the books and the Attorney General's Office is saying you don't have to, then I don't know what we're doing here." (Hearing Tr. 215: 2–10.) Notably, the Assemblyman first learned about the Attorney General's lack of enforcement only in connection with this suit. (Hearing Tr. 217:8–23.) It is equally concerning that the Division of Elections has been affirmatively advising certain candidates, including Plaintiff, that the law need not be followed and the residency requirement for circulators would not be enforced.

The undersigned also recognizes that Defendant has adopted a unique stance. Procedurally speaking, he takes no position on Plaintiff's motion. Substantively, he posits that while N.J.S.A. 19:13-7 is itself constitutional, it is inseverable from N.J.S.A. 19:23-11 (imposing a residency requirement for petition circulators for primary election), which this Court previously found "does not survive strict scrutiny because it is 'substantially broader than necessary to achieve the government's interest,' at least with respect to the Plaintiffs in this case." *Arsenault v. Way*, 539 F. Supp. 3d 335, 348 (D.N.J. 2021).

To put it gently, Defendant's position has been less than helpful. It is not really a defense against Plaintiff's claims, much less her motion. If anything, it advances her cause. When the undersigned questioned Defendant's counsel at the hearing, expressing some confusion and frustration, counsel conceded the frustration that Defendant's position might engender. (Hearing Tr. 40:21–42:7.) Perhaps the worst of it is that, even if the severability argument was deemed

persuasive, there is no procedural mechanism in the context of Plaintiff's motion for the Court to grant relief to her based on Defendant's argument. If there was any doubt, Plaintiff's counsel shut that door completely at the hearing when she expressly disclaimed Defendant's severability argument. (Hearing Tr. 21:12–22:5.)

In the end, the inequities are abundantly clear. Plaintiff has been wronged. The State perhaps too cavalierly advised Plaintiff that she need not comply with a statute that, at least in this moment, it believes to be constitutional. Beyond a modicum of awkwardness, the State feels little impact. But Plaintiff and voters are left to suffer the consequence of the State's problematic advice. As much as the undersigned may aim to right every wrong allowed under the law, in this case two substantial doctrines stand in the way.

## VI. CONCLUSION

Based on the foregoing, the Court will **DENY** Plaintiff's Motion for a Preliminary Injunction (ECF No. 2) and **VACATE** the Temporary Restraining Order (ECF No.15.)

Date: August 31, 2026

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**